254 S.W.2d 15 (1953)
WILT
v.
MOODY.
No. 42876.
Supreme Court of Missouri, Division No. 2.
January 9, 1953.
*16 Kelso Journey, Clinton, William J. Cason, Clinton, for plaintiff-appellant.
Poague, Poague & Brock, Haysler A. Poague and Barkley M. Brock, Clinton, Roy Jones, Warrensburg, for respondent.
ELLISON, Judge.
The plaintiff-appellant motorist Wilt sued the defendant-respondent Moody, and another defendant McMillan, for $15,000 damages under Sections 537.080, 537.090 RSMo 1949, V.A.M.S., for the wrongful death of his wife, who was riding with him, in a double motor car collision on State Highway 13. The first was between his automobile traveling south uphill and the closely following truck of the defendant McMillan, which struck from the rear. That collision projected his automobile to the left side of the highway and into the path of an oncoming northbound truck driven by the defendant-respondent Moody, resulting in a head-on collision. The plaintiff made a compromise settlement with defendant McMillan before the trial. The jury found for the respondent Moody.
The appellant Wilt's assignments of error on appeal complain: of the admission and exclusion of evidence; directions of the trial court instructing the jury to disregard certain testimony of the appellant concerning medical expenses he incurred and paid in the treatment of his wife; and in the giving of instructions.
The casualty occurred between 5:30 and 6 o'clock in the evening of December 21, 1949. On that day, according to the almanac, the sun set at 4:41 p. m. It was cloudy and a slight mist was falling and freezing on appellant Wilt's automobile. Wilt said he was aware of the approach of the southbound McMillan truck behind him from its headlights. At about the same time he saw the glare from the head lamps of the northbound Moody two-ton truck as it approached from the south. It was loaded with 2700 pounds of coal. When appellant's automobile had got about three-fourths of the way up the hill the lights of the McMillan truck behind him indicated it was going to pass his automobile on the left, but then it veered back toward his automobile and struck the left rear bumper and fender thereof. That caused appellant's automobile to head southeast across the highway where Moody's oncoming truck collided with it. Appellant stated he was not able to recall in detail anything that happened after his automobile was struck by the McMillan truck until he was being extricated from the wreckage thereof.
However he said the Moody truck was at least 200 yards southward when the McMillan truck struck his car from the rear, and that Moody then had time and space to avert a second collision. He based those estimates and opinions on measurements he made from adjacent landmarks. The collision with the Moody truck was violent, as disclosed by the damage to appellant's car. His wife was found sitting in the trunk compartment in the back corner of the car, and it was caved in over her. She was unconscious, but lived until after she had been transported to a hospital.
Appellant Wilt contends the Moody truck "struck the killing blow" because it hit his automobile by the door on the wife's side of the car, and because the blow from the McMillan truck was delivered from the rear and cushioned, since its force was exerted *17 in the same direction his own car was moving. He further asserts the force thus produced would be insufficient to cause her injuriescrushing of the chest, and a broken right arm and leg. And he maintains Moody could have averted the collision by stopping or turning his truck away from the path of his (appellant's) automobile. However, we shall not go into that contention because appellant's brief in effect concedes the question was one for the jury, since his assignments only charge procedural errors.
Plaintiff-appellant Wilt's first point complains that the trial court erred in allowing defendant-respondent Moody's counsel to read to the jury on cross-examination a written statement which Moody had given to deputy sheriff Stone the day after the casualty in the absence of appellant. The deputy sheriff had been at the scene of the collision the previous evening shortly after it occurred, and at that time Moody had orally narrated to him (Stone) his own version of how it happened. The appellant and his wife were not present, they having been taken to a hospital.
On direct examination by appellant Wilt's counsel the deputy sheriff testified to respondent Moody's oral statement the evening of the casualty. Therein Moody told the deputy sheriff there was ice and sleet on his truck windshield, but he had his window down and he could look out the side. He said he was on his own side of the road, and that appellant Wilt's car appeared right in front of him, whereupon he cut his wheels to the right, Wilt's car coming on crossways. But Moody's truck was going north and Wilt's car south, both with lights on. And the deputy sheriff found no tire marks from Moody's truck until it turned off on the shoulder of the road.
In the cross-examination of the deputy sheriff respondent Moody's counsel developed that he [the deputy sheriff] had taken a separate written statement from Moody the next day in the absence of the appellant, and appellant's counsel objected to the introduction thereof as self-serving, but agreed that the deputy sheriff as a witness might consult the written statement to refresh his memory. The trial court's ruling was broader. The court held Moody's counsel could ask the deputy sheriff if Moody "said these things" contained in the written statement, to which appellant Wilt's counsel objected and excepted. The only part of the written statement that was read to the jury in the cross-examination, [that is to say, the only part shown in the record with quotation marks] was as follows:
"I was coming down the highway when I seen two cars coming. One of these cars blinked its lights but I don't know which one. When this car was a little ways in front of me the pickup truck (McMillan's) hit it and knocked it in front of my truck. I didn't have time to stop or anything. I turned my wheels to the right to get off the road and we hit almost headon. His car hit my truck twice."
Appellant Wilt's counsel objected to the deputy sheriff's reading this "after the event" written statement of respondent Moody to the jury, on the ground that it was self-serving and made in the absence of appellant. On this point appellant cites the authorities listed below.[1] See also Fishback v. Prock, 311 Mo. 494, 507(4), 279 S.W. 38, 42(5) and Munton v. A. Driemeier Storage & Moving Co., 223 Mo.App. 1124, 1131(2, 3), 22 S.W.2d 61, 63(2, 3).
Respondent Moody answers that "where one party shows a portion of a conversation the other party can show the remaining part of the conversation though it contain self-serving declarations," citing Dunn v. Alton Ry. Co., Mo.App., 88 S.W.2d 224, 228(1-3). In that case the hearsay rule was invoked, not the self-serving doctrine. And for that reason the appellate court refused to consider the applicability of the self-serving doctrine to the case. To that appellant's brief replies that the selfserving rule is a part of the hearsay rule, referring to 31 C.J.S., Evidence, § 216, *18 p. 952, supra which cites the two cases listed below.[2] We think that is true where the hearsay matter is a self-serving statement made by the other party in the absence of his adversary, and for that reason hold the deputy sheriff's reading of respondent Moody's separate written statement to the jury was prejudicially erroneous.
The second point in plaintiff-appellant's brief is that the trial court erred in refusing to allow himin presenting his case in chief at the beginning of the trialto read to the jury certain portions of the testimony of defendant-respondent Moody in a deposition in the cause, on the theory that they contained admissions of his liability. Moody was present in court and it was announced by his counsel that he would testify when the defense introduced its evidence. On that assurance the court overruled the request of appellant's counsel. Error is now assigned on that ruling, citing the first three authorities listed below,[3] to which we have added two others. We rule this assignment in favor of appellant under the authorities cited.
Of these, the paragraph in 31 C.J.S., Evidence, § 308, states that "A deposition of one of several defendants is admissible, as part of plaintiff's case in chief, as an admission against such defendant over the objection of his codefendant." [Emphasis ours.] The Winegar case declares the general rule is that a deposition cannot be read in evidence when the deponent is present in court, but that there are two well established exceptions: (1) to impeach the testimony of such witnesses, and (2) as an admission against interest.
In the Bogie case the defendant took and filed the deposition of the plaintiff, and the plaintiff at the trial offered to read it as a part of his own case, but the defendant objected and the court sustained the objection. When the defendant put on his evidence he offered to read the deposition as an admission of the plaintiff but the plaintiff objected on the ground that he was present in court. The court overruled the objection and permitted the deposition to be read as an admission of the plaintiff. This court sustained that ruling, holding: "the declarations of a party to a suit, made in a deposition taken by his adversary, may be read in evidence against him on the trial in the same suit in which such deposition was taken, whether he be present or absent. He is none the less a party because his adversary has called him as a witness". The Dawes and Pulitzer cases cited are to the same effect.
Respondent Moody contends the trial court's refusal to permit appellant's counsel to read [Moody's] deposition to the jury before he had taken the stand was not prejudicially erroneous because only parts thereof were to be read, and because appellant's counsel did not object when the court made that ruling. We are unable to find any substantiation for that statement. Respondent's brief does not cite the place in the record where such a ruling was made. Appellant's brief cites "R.16" as the place where he proposed to read parts of respondent Moody's deposition, but that is obviously erroneous. At that page a witness Copenhagen was testifying. And a stipulation between counsel is inserted at page 161 of the record in which it is stated that when appellant's counsel sought to read portions of respondent Moody's deposition the court excluded them "over the objections of the plaintiff."
Respondent's brief further argues that all, or nearly all, of the subject matter in Moody's deposition about which appellant's counsel sought to inquire before Moody took the stand was later covered in his cross-examination after he became a witness. But that, of course, did not cure the error if the deposition was more damaging than his trial testimony. And finally respondent's *19 brief contends Moody did not make any admissions against interest in his deposition. We do not agree. The parts he sought to read showed that his truck was about 100 feet away when he saw the McMillan truck and the Wilt automobile colliding; that Wilt's automobile was traveling 20-25 miles per hour; and that his own truck had been going 30 miles per hour, and dropped back to 25 miles per hour; that he hadn't slackened speed very much and was going approximately 25 miles per hour when his truck came in contact with the Wilt car; and that the distance between the point where the McMillan truck hit the Wilt car and the point where the Moody truck collided with it was 75 of 80 feet.
The third assignment in appellant Wilt's brief is that the trial court erred in striking out his testimony that in addition to the funeral bill of $658 for his deceased wife he incurred a $55 doctor bill for medical services rendered during the few hours between her injury and her death. Sec. 537.090 provides that in such actions for wrongful death the jury may give "such damages, not exceeding $15,000, as they may deem fair and just, with reference to the necessary injury resulting from such death, to the surviving parties who may be entitled to sue * * *."
Respondent's brief concedes that proof of the undertaking and funeral expense for the wife was proper, sinceas the statute providesthey were necessary expenses imposed on the surviving husband at and because of her death, he being liable therefor. But as to the premortuary expense for treatment of her injuries respondent asserts they did not come within the statute because they did not result from her death, but on the contrary caused it.
We think appellant's contention is correct and that respondent's view is incorrect. It is elementary that the husband is liable for the reasonable medical expenses of his wife residing with him.[4] And it is generally held that under the wrongful death statute he may prove as an item of damages medical expenses during her last sickness terminating in her death as a result of the wrongful act of the defendant.[5]
Plaintiff-appellant Wilt's fourth contention is that defendant-respondent Moody's Instruction B was contrary to law and in conflict with appellant's instructions. We think the instruction was erroneous. It told the jury, in substance, that respondent Moody had a right to assume appellant Wilt would drive his automobile on his own right side of the highway, and that the third party McMillan would not drive his truck against Wilt's automobile, hereby forcing the latter into the path of Moody's truck; and that Moody was under no duty to slow down, stop or swerve his truck "until it became apparent to him, in the exercise of the highest degree of care", that appellant Wilt's automobile was traveling to the left and into the path of his (Moody's) truck, if so.
Appellant complains of the part of the instruction italicised above stating that Moody was not dutybound to take the precautions mentioned until it became apparent to him that Wilt's automobile was headed toward his truck. He asserts the question submitted ought to have been whether those facts were, or should have been apparent to Moody in the exercise of the highest degree of care, as provided by Section 304.010 RSMo 1949, V.A.M.S., which expressly provides that: "Every person operating a motor vehicle on the highways of this state shall drive the same in a careful and prudent manner, and shall exercise the highest degree of care".
And he cites 65 C.J.S., Negligence § 5, p. 354, 355-356, which states: "The belief of the person charged with negligence as to the existence or nonexistence of danger is not the test, but the true test is whether the circumstances were such that a man of ordinary *20 prudence [in this case one exercising the highest degree of care] would have appreciated that there was danger."[6] [Italics and parenthesis ours.]
Respondent Moody answers that plaintiff-appellant Wilt's case was brought under the humanitarian doctrine, and that in five cases[7] brought thereunder our appellate courts have held a similar instruction was good, or at least not reversible. Of these the Sackman case involved a collision between a streetcar and an automobile. The plaintiff's instruction 1 there required the jury to find the motorman saw and knew or ought to have known, the motorist was in a position of peril and oblivious thereof. The defendant's instruction 6 stated no duty rested on the motorman to warn the plaintiff or retard the streetcar, until it became apparent in the exercise of ordinary care on his part, that the automobile was in or approaching a position of peril, and that the motorist was oblivious of such peril.
The Sackman opinion held this instruction No. 6 would be "somewhat vague" and indefinite standing alone, but that the meaning was clear when it was read with instruction 1. In our opinion the two instructions were in conflict and instruction No. 6 was erroneous in two respects. First, the plaintiff's instruction 1 merely required a jury finding that the motorman knew, or ought to have known, the motorist was in a position of peril and oblivious, whereas the defendant's instruction 6 exempted the motorman from precautionary action "until it became apparent" to him in the exercise of ordinary care that the plaintiff's automobile was in or approaching a position of peril; that plaintiff was oblivious; and that such action was necessary. The word apparent is defined as meaning: actual or real, certain, clear or manifest, obvious, visible and the like. 3 Words & Phrases, page 666.
That being true instruction No. 6 in the Sackman case told the jury the defendant was not liable unless it became apparent, obvious and certain to its motorman in the exercise of due care that action on his part was necessary, whereas the plaintiff's instruction 1 had told them the plaintiff could recover if only they found the motorman knew or ought to have known the plaintiff was oblivious and in a position of peril. Further, in the instant motor vehicle case, § 304.010 of our statutes, supra, applies, and exacted from the defendant-respondent Moody the highest degree of care.
The Carle case, supra,[7] followed the Sackman case, approving an instruction No. 9 stating the defendant there was under no duty to warn, slacken speed, stop or swerve his automobile until it became apparent to him in the exercise of the highest degree of care that the plaintiff pedestrian was in peril and oblivious or unable to extricate himself; and that if the plaintiff's perilous position became "so apparent" after a collision could not be avoided by the exercise of the highest degree of care by the defendant then the plaintiff could not recover. In so ruling the opinion cited and followed the Sackman case.[7]
In the Burow case[7] the defendant's instruction was substantially the same, and the plaintiff's objection to it was that it omitted any recital as to the defendant's humanitarian duty after the peril arose. The decision ruled the instruction as given was more favorable to the plaintiff than if that clause had been incorporated in it; and that it did not conflict with plaintiff's instruction.
In the Branson case[7] the defendant's instruction F stated the defendant had a right to assume the plaintiff would drive his automobile on his right side of the road, and would not suddenly veer to the left *21 closely in front of defendant's car; and that defendant was not dutybound to slow down, stop or swerve his automobile until it became apparent to him in the exercise of the highest degree of care that plaintiff's automobile was being driven to the left and into the pathway of his own automobile; and that if the jury found plaintiff's automobile was being thus driven so closely in front of Davis' truck that Davis could not by the exercise of the highest degree of care avoid striking plaintiff's automobile, then plaintiff was not entitled to recover. The decision held there was no reversible error in the instruction.
In the Williams case[7] the defendant's instruction No. 7 stated the defendant truck driver Davis had a right to assume the plaintiff would drive his own automobile on his own right side of the road and would not suddenly veer to the left of the center of the highway in front of Davis' truck; that there was no duty on Davis to slow down, stop or swerve his truck until it became apparent to him in the exercise of the highest degree of care that plaintiff's automobile was being driven into the pathway of Davis' truck; and if the jury found the plaintiff's automobile was being so driven in consequence of which Davis could not by the exercise of the highest degree of care avert the collision, then plaintiff was not entitled to recover.
Instructions telling the jury a motorist has the right to assume another approaching motorist will obey the law and keep to his own side of the road, and that he owes no duty to the latter until the contrary becomes apparent to him, do not accord with the strict requirement of our motor vehicle law, Section 304.010 RSMo 1949, V.A.M.S., that "Every person operating a motor vehicle on the highways of this state shall drive the same in a careful and prudent manner, and shall exercise the highest degree of care * * *." [Italics ours.] The word assume or "assumption" means the "act of taking for granted, or supposing without proof that a thing is true." Webster's New International Dictionary. That is precisely what our law forbids. He cannot assume away the duty of vigilance.
The motor vehicle act exacts precautionary vigilance or alertness on the part of a motorist before an emergent situation has arisen, and even while the other party is approaching a position of imminent peril. But it does not require him to act to avert a casualty until the latter goes into peril. This has been held in a long line of cases starting with Buehler v. Festus Mercantile Co., 343 Mo. 139, 158(8), 119 S.W.2d 961, 970(12). That is what the Branson case, supra,[7] says and means, and the same is true of many other cases decided since.
Appellant's fifth point is that respondent's instructions C and E were erroneous. We see nothing inherently wrong in instruction C though it does refer to instruction E for an explanation of the definite nature of the proof required. And instruction E states that the plaintiff has the burden of establishing to the reasonable satisfaction of the jury by the greater weight of all the credible evidence in the case that the defendant was guilty of negligence as submitted in other instructions. Of the cases cited by the appellant Wilt, in the Rouchene case[8] the plaintiff's instruction stated the plaintiff was entitled to recover if the evidence preponderated in his favor "although but slightly." The defendant's instruction 6 defined preponderance of the evidence as "the greater weight of the evidence to the reasonable satisfaction of the jury that the charge is true," and further declared that if the jury found the *22 evidence was "evenly balanced" the defendant should prevail. The opinion let the plaintiff's verdict stand [with a remittitur], apparently on the ground that the instructions on both sides were equally wrong.
In the Seago case[8] the defendant's instruction 4 told the jury that unless the plaintiff had proven to your satisfaction by a preponderance or greater weight of the evidence that the defendant did not do a specified act their verdict should be for the defendant. The opinion cited a number of cases in which such instructions had been condemned, but did not rule on it since it had already held another instruction in the case was erroneous. But it added that its comments thereon should be a sufficient warning to the trial courts and the bar.
In the Pulley case,[8] the defendant's instruction 6 told the jury that the defendant was not required to disprove the plaintiff's charge of negligence, but that the burden of proof was on the plaintiff to sustain his charge by the greater weight of the credible evidence to the reasonable satisfaction of the jury. The trial court had granted a new trial and this court affirmed that order, citing many cases including some referred to here.
The respondent cites three cases.[9] The Pulse case[9] held that if the adjective "reasonable" be omitted from such an instruction it is erroneous, but if it is included the instruction is good. The Rasp case[9] similarly ruled. In the Johnson case[9] a burder of proof instruction No. 12 given at the defendant's request required the jury to find the plaintiff had sustained his case by "a preponderance, that is, the greater weight of the credible evidence to the reasonable satisfaction of the jury." In another paragraph the same instruction read, "to the reasonable satisfaction of the jury", omitting the word "reasonable." The opinion criticized the instruction, said the trend of judicial opinion in this state was against them, and predicted that if a motion for new trial should be granted in a future case because of the use of the words "reasonable satisfaction of the jury" or "satisfaction of the jury" as regards the weight of the evidence, this court would sustain the ruling.
In our opinion the law is correctly stated in the Rouchene case, supra [338 Mo. 123, 89 S.W.2d 63],[8] where it is said: "Instructions on burden of proof should not state too many technical rules and, if an attempt is made to go into degrees of preponderance of evidence, it is almost certain to get the matter so complicated that a jury of laymen will have no idea at all as to what is meant. `A short, simple instruction, telling the jury that the burden is on plaintiff to prove his case by a preponderance or greater weight of the credible evidence, and that unless he has done so the jury must find for defendant, ought to be sufficient to inform the jury what plaintiff is required to do. A plain declaration to that effect will be easily understood by a jury. The more the instruction is elaborated upon, the more complex it becomes and the more it is likely to be misunderstood.' [Citing case.]"
For the reasons stated in the opinion the judgment is reversed and the cause remanded.
TIPTON, J., concurs in result.
LEEDY, P. J., concurs.
NOTES
[1] 31 C.J.S., Evidence, § 216, pp. 948, 952; § 380, p. 1169; 22 C.J., § 504, p. 421; 31 C.J.S., Evidence, § 380; Weller v. Weaver, 231 Mo.App. 400, 404(8), 100 S.W.2d 594, 597(10); Clark v. Huffaker's Adm'r, 26 Mo. 264, 267.
[2] Caplan v. Caplan, 83 N.H. 318, 326-327, 142 A. 121, 127(33); All v. Prillaman, 200 S.C. 279, 291, 20 S.E.2d 741, 746(1), 159 A.L.R. 981, 988(6).
[3] 31 C.J.S., Evidence, § 308, p. 1086; Winegar v. Chicago, B. & Q. R. Co., Mo.App., 163 S.W.2d 357, 367; Bogie v. Nolan, 96 Mo. 85, 90(1), 9 S.W. 14, 15. See also: Dawes v. Williams, 328 Mo. 680, 686(1), 40 S.W.2d 644, 646(2); Pulitzer v. Chapman, 337 Mo. 298, 319(3), 85 S.W.2d 400, 411(9).
[4] 41 C.J.S., Husband and Wife, § 15, p. 404; Lowenstein v. Widdicomb, Mo.App., 52 S.W.2d 1044, 1045(1).
[5] 25 C.J.S., Death, § 108, p. 1259; Rains v. St. Louis, I. M. & S. Ry. Co., 71 Mo. 164, 169, 36 Am.Rep. 459; McCullough v. W. H. Powell Lbr. Co., 205 Mo.App. 15, 16, 29(10), 216 S.W. 803, 808(10); 54 A.L.R. page 1077, note; 14 A.L.R.2d page 536, note.
[6] Guthrie v. City of St. Charles, 347 Mo. 1175, 1189(5), 152 S.W.2d 91, 98(10); Beahan v. St. Louis Pub. Serv. Co., Mo.App., 230 S.W.2d 173, 175-176(3); Id., 361 Mo. 807, 808, 811(2), 237 S.W.2d 105, 107(3); Hall v. St. Louis Pub. Serv. Co., Mo.App., 248 S.W.2d 33, 36(3).
[7] Sackman v. Wells, Mo.Sup., Div. 1, 41 S. W.2d 153, 154-155(1); Carle v. Aiken, Mo.Sup., Div. 2, 87 S.W.2d 406, 408-409 (2); Burow v. Red Line Service Co., 343 Mo. 605, 608-609(1), 122 S.W.2d 919, 920 (1); Branson v. Abernathy Furniture Co., 344 Mo. 1171, 1182-1183(4), 130 S.W. 2d 562, 568-569(12); Williams v. Davis, Mo.App., 168 S.W.2d 483, 485-486(3, 4).
[8] Rouchene v. Gamble Const. Co., 338 Mo. 123, 134(5), 89 S.W.2d 58, 63(11); Seago v. New York Cent. R. Co., 349 Mo. 1249, 1255(4), 164 S.W.2d 336, 341(8), 147 A. L.R. 372; Pulley v. Scott, Div. 2, 362 Mo. 1217, 247 S.W.2d 767, 769(2).
[9] Pulse v. Jones, Mo.Sup., Div. 1, 218 S.W. 2d 553, 557(6); Rasp v. Brumbach, Mo. Sup., Div. 1, 223 S.W.2d 472, 473-474(2-4); Johnson v. Dawidoff, 352 Mo. 343, 353(4), 177 S.W.2d 467, 472(8).