255 S.W.2d 84 (1953)
PHILLIPS et al.
v.
PRUGH.
No. 28428.
St. Louis Court of Appeals. Missouri.
February 17, 1953.
Rehearing Denied March 13, 1953.
*85 *86 Warren H. May, of Louisiana, and Evans & Dixon, John F. Evans and Wm. W. Evans, all of St. Louis, for appellant.
James D. Clemens, of Bowling Green (Haley & McGinnis, of St. Louis, of counsel), for respondents.
WEBER, Special Judge.
This is an appeal from the Circuit Court of Pike County, Missouri, wherein the plaintiff Paula Ruth Phillips, fourteen years of age, recovered judgment for her personal injuries and her mother, the plaintiff Laura R. Phillips, recovered judgment for medical expenses, hospital bill, nursing care and future expenses for and loss of services of her minor child, as the result of a collision between a sled upon which the child was riding and an automobile driven by the defendant.
The collision occurred in Ashburn, Missouri, a village of 156 population, at the intersection of Main Street with the County Road from Louisiana, Missouri, on Saturday, December 9, 1950 at about 10:30 a.m. Both streets were gravel surfaced and twenty feet wide with Main Street running east and west and the county road north and south. The weather was clear and cold and it had snowed a week before and about three or four inches of snow and ice had packed on the surface of the streets.
Main Street sloped down eastwardly toward and across the county road, but the intersection itself was more or less level. Paula Ruth and two girl friends of about the same age had gone out to sled ride on the Main Street hill which had been used for that purpose for many years and of which use defendant had notice.
The children had started their ride at the top of the hill about three hundred feet from the intersection. They rode one on top of the other, or, as it was more aptly expressed in my coasting days, "belly buster" style. They coasted about two hundred feet to a "leveling off" place where ashes that had been thrown on the street stopped them. One little girl got off and pushed the other two through the ashes, gave another push, jumped back on top and they continued down the hill, traveling on the south side, or their right-hand lane, of the street. Witnesses estimated speed of sleds on that hill at fifteen to twenty miles per hour.
The defendant and his wife were traveling south on the county road in their 1941 Ford Sedan at a speed of ten miles per hour and as the defendant testified, "might have slowed a little as I went into the intersection".
The testimony further disclosed that the northwest corner of the intersection was a weeded vacant lot and was part of the same hill Main Street traversed at this point. A driver of an auto proceeding south had to be at the intersection to see the top of the hill, but from a point thirty to forty feet north of the intersection one could see forty feet up the hill and from twenty feet back could see one hundred feet up the hill.
The sled struck the auto at the juncture of the right front fender and running board and the collision occurred in the southwest quadrant of the intersection. Paula Ruth was seriously injured but the amount of the judgment is not in dispute on this appeal.
Plaintiff introduced defendant's deposition and upon his motion for directed verdict being overruled at the close of plaintiffs' case, defendant went to the jury without offering any testimony. The deposition revealed the additional facts that defendant never saw the children but that his wife did and she screamed immediately before the impact; that under all of the conditions prevalent at the time he could have stopped his car in ten to twelve feet.
Only four assignments of error are raised and they are: (1) the court's sustaining plaintiff Laura Phillips' motion to strike a part of defendant's answer (in which he raised the issue of contributory negligence on the part of the mother in *87 permitting the child to sled ride on Main Street when she knew it crossed the County Road; (2) admission of exhibits 1, 2 and 3; (3) the giving of Instruction 2 for the plaintiffs; and (4) overruling defendant's motion for directed verdict.
As to assignment (1), the motion to strike, let it be pointed out that plaintiffs' petition is based solely on the humanitarian doctrine. Defendant contends that while the defense of contributory negligence would not be available to him as against the child he nevertheless should be entitled to plead and prove the contributory negligence of the mother. He cites no authorities but contends that should be the law.
Such a contention is repugnant to the theory of humanitarian cases, because the humanitarian case pre-supposes the negligence of plaintiff, and in spite of it, puts a duty on anyone who does or should see the peril, in time thereafter to stop, swerve, slacken speed or warn, to do so and thus avoid the injury and it has been repeatedly held that contributory negligence is not a defense in humanitarian cases. Green v. Guynes, 361 Mo. 606, 235 S.W.2d 298; Harrow v. Kansas City P. S. Co., 361 Mo. 42, 233 S.W.2d 644; and for further citations on the point see 22 Missouri Digest, Negligence.
If the injured party's contributory negligence is not a ground of defense it stands to reason that any person responsible for such party could likewise not be charged with negligence, as the basis of the claim is liability in the face of negligence because of the greater duty owing on the part of defendant. Therefore defendant's contention is without merit and we hold the trial court properly sustained the motion to strike the allegation of contributory negligence. Cooper v. Kansas City Public Service Co., 233 Mo.App. 229, 116 S.W.2d 212, loc. cit. 215(5).
As to assignment number (2) the exhibits complained about were photographs of the intersection and they were taken in March after the accident in December. The only difference in the scenes shown in the photographs to that on the date of the accident was the absence of snow. All witnesses testified that the pictures were a fair representation of the scene as of the day of the accident except for the absence of snow and this difference was clearly disclosed to the jury.
The fact that there have been changes in conditions, including even substantial changes, will not necessarily exclude a photograph where the changes can be and are explained so that the photograph as explained, will give a correct understanding of the conditions existing at the time and whether the exhibits are a proper representation and practically instructive is a preliminary question to be determined by the trial judge. 32 C.J.S., Evidence, § 715; Johnson v. Kansas City, Mo.App., 272 S.W. 703; Reed v. Coleman, Mo.App., 167 S.W. 2d 125.
Under the explanations made in the testimony, the exhibit in question served as a help to the jury in giving them a view of the scene of the accident, a view of the surrounding territory and the distances involved and were properly admitted into evidence.
Assignments of error numbered (3) and (4) can be considered together. The question then to determine is, do the facts make this a properly submissible humanitarian case, and if so, was Instruction 2 a correct direction to the jury?
We can say without dispute that a sled is not the type of conveyance which can be stopped at will. It must run its course in order to come to a safe stop and the only control that can be exercised over it is the ability to guide and that ability is limited. Its speed is determined by the elements, gravity, the load and the push to start.
A sled coming down a hill at fifteen to twenty miles per hour and approaching an intersection is certain to cross that intersection and run its course. Its passengers are therefore in a position of peril at any time an automobile is in a position to cross the same intersection and the peril is imminent when they will both reach the intersection at the same time. For an automobile driver to see the sled coming, *88 is to know it will reach and cross the intersection. To fail to stop, if you can, is negligence, for the automobile is the only vehicle of the two which can stop. Failure to see is not a defense for the law enforces the duty to see if the circumstances permit.
Therefore, let us look to the facts in the instant case. If defendant was traveling ten miles per hour, as he said he was, and the sled was traveling fifteen to twenty miles per hour, as the testimony disclosed, the auto of defendant was traveling 14.66 2/3 feet per second while the sled traveled 22 to 29.33 1/3 feet per second. When the automobile was thirty-five feet from the point of impact, (or twenty feet from the intersection) the sled was from fifty to sixty-seven feet from the point of impact, depending upon its speed. At that point defendant could see one hundred feet up the hill and the slope of the hill was such that plaintiff and her companions could be more readily seen than if they had been on ground level with the road defendant was traveling. Defendant testified that he could stop his car in ten to twelve feet under all existing conditions and thus could have stopped two or three times before he reached the point of impact.
Therefore the plaintiffs made a submissible case under the light of the testimony most favorable to them and the court properly overruled the motion for directed verdict.
The last point of error complained of is the question of whether or not Instruction 2 properly submitted the issues to the jury. The instruction reads in its pertinent parts, as follows: "The court instructs you that it was the duty of Benton M. Prugh, while driving his automobile at the time and place mentioned in evidence, to keep a constant lookout both ahead and to the sides to discover other persons upon and approaching the county road on which he was driving, and to use the highest degree of care to avoid injuring such persons; therefore, if you find and believe from the evidence that Paula Ruth Phillips was coasting down an intersecting public road toward the county road on which Benton M. Prugh was driving and that she was in a position of imminent peril of colliding with his automobile, and that Benton M. Prugh by exercising the highest degree of care could have seen her coasting toward the intersection and in a position of imminent peril, in time thereafter for Benton M. Prugh, exercising the highest degree of care and with the means and appliances at hand, and with reasonable safety to the occupants of his automobile, to have slackened the speed of and stopped his automobile, etc. etc. etc." (Italics ours.)
Defendant complains of the words in the instruction which we have italicized. He cites those cases treating the subject of approaching and in a position of imminent peril and the injection of antecedent and primary negligence into a humanitarian case.
In the case of Perkins v. Terminal R. Ass'n, 340 Mo. 868, 102 S.W.2d 915, 920, the words "approaching and in a position of imminent peril" were approved in an instruction. There were two separate dissenting opinions and three dissents in all in that case, and since that time the law in Missouri has become well defined that the usage of such words are error because a person cannot be approaching and in a position of imminent peril at the same time and thus the language broadens the duty of the defendant. The duty to act does not begin until the plaintiff is actually in a position of imminent peril and an instruction which predicates liability on failure to act while plaintiff is approaching a position of imminent peril is erroneous. Evans v. Farmers Elevator Co., 347 Mo. 326, 147 S.W.2d 593; Stokes v. Wabash Rd., 355 Mo. 602, 197 S.W.2d 304; Hilton v. Terminal Rd. Ass'n, 345 Mo. 987, 137 S.W.2d 520; Buehler v. Festus Merc. Co., 343 Mo. 139, 119 S.W.2d 961; Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47; Lakin v. Chicago, R. I. & P. R. Co., 229 Mo.App. 461, 78 S.W.2d 481, 95 S.W.2d 1245.
An instruction which permits the jury to determine the time and place of imminent peril is a proper one so long as the instruction does not contain a misstatement as to where a position of imminent peril begins. Silver v. Westlake, Mo.Sup., 248 S.W.2d *89 628; Harrington v. Thompson, Mo.Sup., 243 S.W.2d 519.
A careful reading of the instruction in question leads us to the conclusion that the words "coasting toward" and "coasting down" refer to the approach of the intersection and not the approach of the position of imminent peril. However, the instruction as to that phase could have been more aptly worded by saying, "coasting toward the intersection and that she was then in (or came into) a position of imminent peril", as suggested in the case of Harrington v. Thompson, supra.
If that were the only error complained of in the instruction we would be inclined to agree with the plaintiffs, but coupled with this is the introductory portion of the instruction which required the defendant to "keep a constant lookout both ahead and to the sides to discover other persons approaching the county road on which he was driving and to use the highest degree of care to avoid injuring such persons".
The injection of antecedent or primary negligence into a case submitted solely upon the humanitarian doctrine is prejudicially erroneous and has been so held repeatedly. Mayfield v. Kansas City So. Ry. Co., 337 Mo. 79, 85 S.W.2d 116; Reiling v. Russell, 348 Mo. 279, 153 S.W.2d 6; Wright v. Hummel, Mo.App., 164 S.W.2d 640; Murphy v. St. Louis Public Service Co., Mo.Sup., 244 S.W.2d 31; Kelley v. St. Louis Public Service Co., Mo.Sup., 248 S.W.2d 597.
The reason for this is that in a humanitarian case the defendant has no duty to act until the injured party is in a position of imminent peril, and the imposition of a duty prior to the plaintiff being in a position of imminent peril is to broaden the obligation of the defendant. Likewise, the imposition of a primary duty, such as lookout and highest degree of care, requires the defendant to contest such charges without the benefit of the defense of contributory negligence.
This portion of the instruction is abstract and under the present decisions of our courts bare abstract statements of law with no effort made to apply said principles of law to the facts of the case, are not proper and cause a confusion of the issues. Wright v. Hummel, supra; Schipper v. Brashear Truck Co., Mo.Sup., 132 S.W.2d 993, 125 A.L.R. 674.
The instruction in question also uses the words "slackened the speed of and stopped" and there was no evidence in the case that the collision could have been avoided by slackening the speed. However, the conjunction "and" is used and this criticism alone would be harmless error.
However, this instruction seems to contain a little bit of all the faults and criticisms which are usually leveled at humanitarian instructions. It required a constant lookout and required the highest degree of care to be used. It inaptly uses the phrases of "coasting toward" and "coasting down". It injects an element of slackening which was not proven by evidence. The combination of all of the above criticisms, in view of the issues and evidence, could have caused the jury to be misdirected as to the sole element of when the child came into a position of imminent peril, defendant's ability to observe and to stop thereafter.
While the court properly struck defendant's plea of contributory negligence, properly admitted the exhibits and while plaintiffs made a submissible case, yet the giving of Instruction 2 was erroneous under the facts here presented and for the reasons heretofore stated, and the cause will be reversed and remanded.
BENNICK, P. J., and ANDERSON, J., concur.