BETTY LOU ANDERSON, a Minor, by Her Next Friend, WILLIAM ANDER-
SON (Plaintiff) Respondent, v. BENTON M. PRUGH, (Defendant)
Appellant, No. 43609—264 S. W. (2d) 358.

Division One, February 8, 1954.

558

*Warren H. May, Evans & Dixon, John F. Evans* and *Wm. W. Evans* for appellant.

*James D. Clemens* and *John H. Haley, Jr.,* for respondent.

DALTON, J.—This cause comes to the writer on re-assignment. The action is for damages for personal injuries sustained by plaintiff, a twelve year old child, when a sled upon which she was riding collided with defendant's automobile. The cause was submitted solely upon defendant's humanitarian negligence in failing to have "slackened the speed of and stopped his automobile" and to have thereby avoided the collision and injury. Verdict and judgment were for plaintiff for $15,000 and defendant has appealed.

With some modification, we have adopted the statement of facts and certain other portions of an opinion previously submitted for adoption in this case. On December 9, 1950, about 10:30 a.m., the plaintiff and her sister Nettie B. Anderson then eleven years of age, and Paula Ruth Phillips then fourteen years of age, were coasting east down Main Street in the village of Ashburn in Pike County, Missouri. All three girls were on the sled "belly-buster style." The plaintiff was lying on the sled first, with Paula Ruth Phillips atop her and plaintiff's sister, Nettie B. Anderson, lying atop Paula. At the intersection of Main Street and the County Road the plaintiff's moving sled collided with the right front wheel and fender of a moving southbound Ford automobile driven by defendant. Plaintiff and the other girls were injured. In an action for damages for personal injuries sustained in this collision, Paula Ruth Phillips recovered a judgment against the instant defendant. See, Phillips v. Prugh (Mo. App.), 255 S.W. (2d) 84.

Main Street, down which the girls were coasting east, was a gravel road the traveled portion of which was about 20 feet wide. It was a "very sharp hill" sloping down to the east to the County Road. An inference as to the specific grade of the hill could be drawn from the many photographs in evidence. The County Road, upon which defendant was driving south, was a gravel road the traveled portion of which was about 20 feet in width and was "practically level." Main Street and the County Road intersect at a right angle at the foot of the Main Street hill down which plaintiff was coasting. The intersection itself sloped a little to the east, but only enough to carry off the water when it rained.

The day was clear and cold with good visibility. Snow had fallen on previous days and both street and road were covered with hard packed snow and ice. At the northwest corner of Main Street and the County Road there was vacant ground, sloping uphill from both roadways. That vacant ground was on plaintiff's left as the sled approached the County Road and was on defendant's right as his car

approached Main Street. There were brush and weeds on that hill but not down to the corner where a building had once been erected. Back some fifty feet west of the corner, there was a cut or embankment on the north side of Main Street. From the testimony and the photographic exhibits the jury could have found that from a point on the County Road 40 feet north of the intersection there was visibility up the Main Street hill to the west for 75 to 100 feet; and that from a point on the County Road 20 feet north of the intersection there was visibility up the Main Street hill to the west for 150 to 175 feet.

On the morning in question a number of children were coasting east down the ▇▇▇▇ Main Street hill, which was very slick. They were coasting down the south side of the street. Plaintiff was using her "pretty fast sled." She testified that at the top of the hill she told one of the boys that "I was going to beat him down the hill." The three girls (all on plaintiff's sled) started at the top of the hill, some 300 feet from the intersection. Nettie Anderson gave the sled a push and then jumped on. They coasted down hill about 100 feet to a leveled out place where they were stopped by ashes sprinkled on the snow. Nettie Anderson jumped off, again pushed the sled and then assumed her original position on the sled. The sled then started down the steeper part of the hill. It "started down the hill pretty fast," and almost collided with a utility pole which was at the south side of the Main Street hill and about 135 feet west of the intersection. None of the three girls on plaintiff's sled could remember what thereafter happened and none of them remembered seeing the defendant's automobile. The sled with the three girls on it went on down the hill. Entering the intersection the sled and the three girls collided with defendant's automobile with such force that defendant's right front fender was torn loose from the running board of the automobile, the right front tire was punctured and the rim damaged. The impact was in the southwest quadrant of the intersection at or near the center of the south half of Main Street.

The defendant testified that he was driving his Ford Tudor sedan south on the County Road and approaching the Main Street intersection; that the road was covered "with ice and snow, packed snow * * * the traveled portion of the road was icy"; that in the block immediately north of Main Street his speed was 10 miles per hour; that when approaching the intersection there were no sleds, or persons, or vehicles in, on or crossing the intersection, and he heard no noises of any kind; that as he entered the intersection his wife (seated to his right) screamed and something hit the side of the car; that he had only a "glance" or "glimpse" of whatever hit his car but could not distinguish what it was; that it was 15 or 20 feet from his car when he had the "glimpse" of it; that his car was then moving about 10 miles per hour; that he immediately and as quickly as he could applied the brakes but his car had not perceptibly slowed, or "scarcely at all," at

the time of the impact; and that, when he jumped out of his Ford automobile, the three girls were lying in the intersection. Upon his deposition, read in evidence, defendant testified that at 10 miles per hour, "I suppose it would have taken 10 or 12 feet to have stopped." Upon the trial, defendant testified that allowing for reaction time, "I believe it would have taken ten feet to stop after I got my foot on the brake." Defendant's wife testified that defendant's automobile came to a stop "within about six or eight feet from the time" she first saw the children on the sled. There was further evidence that, the automobile came to a stop after it had fully crossed the intersection.

Defendant-appellant assigns error on the trial court's action (1) in admitting certain evidence, (2) in refusing to direct a verdict for defendant, and (3) in giving Instruction 1. Appellant further contends that the verdict for plaintiff for $15,000 is excessive.

With reference to the admission of alleged improper evidence, the trial court permitted witness Courtney L. Phillips (who came to the scene of the accident after the collision had occurred) to testify (over defendant's objections), that in his opinion the maximum speed which a sled would attain coming down the Main Street hill in question under the existing circumstances would not have been faster than 20 miles an hour. Mr. Phillips testified that: he did not see plaintiff's sled on the hill or at any time until after the accident had occurred; that he had observed other sleds come down that hill with three people on them on other occasions; and that he never, by any device, measured the speed of a sled in "actual miles per hour, it would be purely a guess on my part * * *. All I could truthfully say would be I can offer my opinion what I thought would be a maximum rate of speed, which would be purely an estimate on my part." No evidence was offered as to the actual speed of the sled. It "could go pretty fast down hill."

In plaintiff's brief her counsel assert the materiality of the above testimony in these words: "However, if such a sled could not have traveled more than 20 miles an hour (twice defendant's speed), then when defendant was 35 feet back from the point of impact, the sled was no more than 70 feet up the hill, and well within defendant's range of visibility. So, the maximum speed of the sled was a material factor in determining discoverable peril." In plaintiff's brief her counsel argue the admissibility of the above testimony in these words: "Certainly the witness (Phillips) who had long observed coasting on the hill, and who had seen it (the hill) on the day of the collision, was more capable of estimating the maximum speed than was the jury. The qualification of the witness to give his opinion was largely within the discretion of the trial court, and its ruling is entitled to due deference."

We have concluded that the Phillips testimony that the maximum speed a sled would attain on the hill in question was 20 miles an hour

was improperly admitted. Mr. Phillips had never seen this particular sled in operation or moving down that hill, and had observed no sled on that hill on that day. It is conceded that the hill was covered with packed snow and ice. The speed a sled might attain on the hill of necessity would vary with the slickness of the snow and ice thereon, which well might have varied from day to day or even from hour to hour, the smoothness of the sled runners, the weight on the sled, the starting force, the grade percentage on the hill, the length of the hill and other factors. It does not appear that Phillips had any particular information as to any of those matters; nor was there particular testimony introduced respecting them. Under the instant circumstances the Phillips ''guess'' or ''estimate'' as to a possible maximum speed was merely conjecture which invaded the jury's province and had no probative value whatsoever. Its admission was error. See Cole v. Uhlmann Grain Co., 340 Mo. 277, 100 S.W. (2d) 311, 322; Homan v. Missouri Pac. R. Co., 334 Mo. 61, 79, 64 S.W. (2d) 617, 625; Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S.W. (2d) 601, 606. The admission of such conjecture as to the maximum speed such a sled could have attained under the circumstances shown was not discretionary with the trial court, because it had no probative value and because it concerned a matter not properly subject to expert testimony, absent eyewitness testimony as to speed. Hamre v. Conger, 357 Mo. 497, 209 S.W. (2d) 242, 249. While we have concluded that the mentioned testimony should not have been admitted, it does not follow that plaintiff (without the benefit of said testimony) failed to make a case for the jury. From the facts in evidence the jury could determine the speed of the sled and could find that the sled and its passengers were in discoverable imminent peril, when defendant still had the ability to avoid the collision and injury. The time and place plaintiff came into imminent peril was for the jury. Silver v. Westlake (Mo. Sup.), 248 S.W. (2d) 628, 632(1); Harrington v. Thompson (Mo. Sup.), 243 S.W. (2d) 519, 525(8).

Whatever speed the plaintiff's sled may have attained in actual miles per hour, after that sled was started down this hill from a point about 200 feet west of the intersection, where it had been stopped by ashes in the street, and after the sled had passed the utility pole 135 feet west of the intersection, it was reasonably certain to continue its course down the hill, cross the intersection and run its course. It should have then been reasonably apparent to one in the exercise of the highest degree of care that the sled could not thereafter be stopped by the girls thereon, nor be turned aside prior to crossing the intersection. Under the testimony before them, and from their examination of the photographic exhibits and plat filed here, the jury could reasonably have found that, after the sled passed the utility pole, the plaintiff on the sled was in imminent peril and danger of a collision with the automobile, if the automobile moved into and across the

intersection, and that such facts were reasonably apparent to defendant. When defendant first could have discovered the sled he could then have known the sled would cross the intersection, for it is reasonably inferable that the sled had then passed east of the utility pole. Under the humanitarian doctrine as applied in this state, in the exercise of the highest degree of care the defendant is charged with having discovered the approaching sled when it first came into a position of peril, it then being discoverable by him, as stated, and he was then required to take immediate steps to stop the automobile and avoid injuring plaintiff. DeLay v. Ward (Mo. Sup.), 262 S.W. (2d) 628, 634(8); Mayfield v. Kansas City So. R. Co., 337 Mo. 79, 85 S.W. (2d) 116, 123.

At 10 miles an hour defendant's car was moving about 15 feet per second. Under his own testimony, and even allowing for a reaction time of 3/4 of a second, or approximately 11 feet, defendant could have stopped his Ford in less than 25 feet. Under this evidence if defendant had looked up the hill to the west when he was 20 feet north of the intersection he could have seen anything 150 feet west on the Main Street hill and he could then have stopped before reaching the point of impact. And under the instant evidence the jury could reasonably infer that the collision would not have occurred if defendant had discovered the sled when the law placed on him the duty to first discover it, i.e., when it was in imminent peril and discoverable by him coming down the hill, and if he had *then* attempted to stop his automobile. That must be true, for at that time, when he first could have discovered it, defendant had the ability and the distance in which to have stopped before the collision occurred. When the record facts and circumstances are considered in the light most favorable to plaintiff, we conclude and rule that the trial court did not err in refusing to direct a verdict for defendant. Phillips v. Prugh, supra, 255 S.W. (2d) 84, 88; Hopfinger v. Young (Mo. App.), 179 S.W. 747; Murphy v. Quick Tire Service (Mo. App.), 47 S.W. (2d) 202.

Was Instruction No. 1 prejudicially erroneous? Appellant contends that the instruction imposed "a greater and broader duty" than the humanitarian doctrine imposed; that it erroneously injected antecedent and primary negligence; that it declared defendant negligent as a matter of law and failed to require a finding of negligence; and that it was in direct conflict with and was contradictory of defendant's correction of Instruction No. 3 and thereby confused the issues. Respondent, on the other hand, contends that the instruction, considered in its entirety, correctly declared the law; and that the introductory portion, which abstractly stated defendant's duty, was explained, limited, qualified, restricted and made dependent upon the finding of specific facts constituting humanitarian negligence as a matter of law.

Respondent's position is supported by . Hoelzel v. Chicago, R.I. & P. R. Co., 337 Mo. 61, 85 S.W. (2d) 126, 130(9); Fair v. Thompson,

240 Mo. App. 664, 212 S.W. (2d) 923, 930(4); Brown v. Alton R. Co., 236 Mo. App. 26, 151 S.W. (2d) 727, 744(35) and by certain statements in the opinion in Wilt v. Moody (Mo. Sup.), 254 S.W. (2d) 15, 20, which statements, as we shall see, appear to confuse primary and humanitarian negligence. The Hoelzel case was decided prior to the case of Buehler v. Festus Merc. Co., 343 Mo. 139, 119 S.W. (2d) 961, 970(12), which denied the application of the humanitarian doctrine to a case where the plaintiff was only *approaching* a position of imminent peril, and the case is not in accord with other cases more recently decided by this court. See, Murphy v. St. Louis Public Service Co., 362 Mo. 772, 244 S.W. (2d) 31, 35. We have reached the conclusion that Instruction No. 1 was erroneous.

 The cause of action in question here was based upon negligence under the humanitarian doctrine. Plaintiff alleged "that in the operation of said automobile at the time and place in question, the defendant was negligent in the following particulars: Defendant saw, or by the exercise of the highest degree of care, could have seen plaintiff Betty Lou Anderson in a position of imminent peril of being struck by said automobile, in time thereafter, by the exercise of the highest degree of care, and with the instrumentalities at hand and with safety to himself and others, to have avoided running into and against Betty Lou Anderson by stopping said automobile, by checking the speed thereof, or by turning the same aside, all of which defendant negligently failed to do."

By Instruction No. 1, plaintiff undertook to submit defendant's humanitarian negligence in failing to slacken speed and stop, but the instruction opened as follows: "The Court instructs the jury that *it was the duty of Benton M. Prugh, while driving his automobile at the time and place mentioned in evidence, to keep a vigilant look-out*, both ahead and to the sides, *to discover other persons upon and approaching the county road* on which he was driving, and *to use* the highest degree of care *to avoid* injuring such persons; therefore, you are further instructed that if * * *." (Italics ours).

The instruction stated an abstract rule of law that had no application to a case submitted under the humanitarian doctrine. The instruction failed to tell the jury that the stated rule applied in this case only after the plaintiff was in a position of imminent peril. It is well settled that the legal obligations imposed under the humanitarian doctrine do not come into existence until imminent peril exists. The basic fact upon which the doctrine rests is imminent peril. There was no duty under that doctrine "to keep a vigilant look-out," to see, to discover or to act until imminent peril arose. Johnson v. St. Louis Public Service Co. (Mo. Sup.), 251 S.W. (2d) 70, 75; Buehler v. Festus Merc. Co., supra, 119 S.W. (2d) 961, 970; Phillips v. Henson, 326 Mo. 282, 30 S.W. (2d) 1065, 1067; Alexander v. St. Louis & S.F.R. Co., 327 Mo. 1012, 38 S.W. (2d) 1023, 1026; State ex rel. Fleming v. Bland,

322 Mo. 565, 15 S.W. (2d) 798, 800. The question here is not whether defendant kept the lookout and exercised the care required by the statute and performed his primary and statutory duties in the operation of his automobile, but whether by so doing the plaintiff could have been seen in time to avoid the injury after imminent peril arose. Mayfield v. Kansas City So. R. Co., supra, 85 S.W. (2d) 116, 124. The abstract statement of a rule of law which imposed these duties, prior to imminent peril, had no application to a case submitted under the humanitarian doctrine and was clearly misleading.

The evidence in this case was sufficient to show a violation of the duties mentioned in the abstract statement and which duties were imposed by the statutes of this state, but plaintiff did not plead nor rely on primary negligence. It is well settled that an instruction which predicates liability upon defendant's failure to act while the plaintiff is *approaching* a position of imminent peril is erroneous in a case submitted only upon humanitarian negligence. Evans v. Farmers Elevator Co., 347 Mo. 326, 147 S.W. (2d) 593, 598; Stokes v. Wabash R. Ass'n., 355 Mo. 602, 197 S.W. (2d) 304, 307; Hilton v. Terminal R. Ass'n., 345 Mo. 987, 137 S.W. (2d) 520, 522; Buehler v. Festus Merc. Co., supra, 119 S.W. (2d) 961, 970; Smithers v. Barker, 341 Mo. 1017, 111 S.W. (2d) 47, 51; Phillips v. Prugh, supra, 255 S.W. (2d) 84, 88.

The questioned part of Instruction No. 1 states an even broader duty, than the duty to act while plaintiff was approaching a position of imminent peril, since it told the jury that it was defendant's duty "to keep a vigilant look-out * * * to discover other persons *upon and approaching the county road* * * * and to use the highest degree of care to avoid injuring such persons," (Italics ours). The statement that it was defendant's duty "to ▇▇▇ use the highest degree of care to avoid injuring such persons" was in effect a roving commission for the jury to determine what could have been done to avoid injuring plaintiff and was even broader than the instruction condemned in Reiling v. Russell, 348 Mo. 279, 153 S.W. (2d) 6, 9, as to which we said, "the jury, because of the first paragraph of the instruction, may have believed that they should return a verdict against defendants because of excessive speed or some other act of negligence occurring before plaintiff's perilous situation arose." As stated, the duties and obligations imposed by law upon the defendant as he *approached the intersection* in question *and prior to the time that plaintiff was in discoverable imminent peril*, were not relied upon as a basis for plaintiff's action. The instruction confused primary and humanitarian negligence.

It is true that our motor vehicle law, Section 304.010 R.S. Mo. 1949, provides that "Every person operating a motor vehicle on the highways of this state shall drive the same in a careful and prudent manner, and shall exercise the highest degree of care * * *." And it is further true that "the motor vehicle act exacts precautionary vigilance or alertness on the part of a motorist before an emergent situation has

arisen, and even while the other party is approaching a position of imminent peril'' (Wilt v. Moody, supra, 254 S.W. (2d) 15, 20; Brown v. Toedebush Transfer Co., 354 Mo. 611, 190 S.W. (2d) 239, 240), but in such situation the failure to exercise such care is primary negligence and not humanitarian negligence. Mayfield v. Kansas City So. R. Co., supra, 85 S.W. (2d) 116, 123. A plaintiff may not in an instruction have the benefit of the primary duty imposed by the statute and at the same time avoid the defense of contributory negligence. Clearly, we believe, Instruction No. 1 stated an abstract rule applicable alone to primary negligence and it failed to tell the jury that no such humanitarian duty arose until imminent peril came into existence. There was no humanitarian duty ''to avoid injuring'' plaintiff prior to the time she came into imminent peril. The rule stated in the opening portion of the instruction had no more application in this case than the general rule that in a primary negligence case the plaintiff must exercise ordinary care for her own safety; and that a failure to exercise such care contributing to her injury would defeat recovery. No one would argue that it was proper in a humanitarian case to give an instruction abstractly stating that it was the plaintiff's duty to exercise ordinary care to keep a lookout for automobiles on the highway and to avoid a collision with them.

The case of Killinger v. Kansas City Public Service Co. (Mo. Sup.), 259 S.W. (2d) 391, 394, also relied upon by respondent, was a primary negligence case and the rule of law abstractly stated in the opening paragraph of the questioned instruction *was applicable to such a case*, whether submitted under the res ipsa loquitur doctrine or on specific primary negligence; and in that case it was followed by a paragraph of factual hypotheses submitting defendant's res ipsa negligence. We are not here considering an instruction containing an abstract statement of a correct and applicable rule of law, which is accompanied by a further call for a finding of all the facts required by such rule of law to create a liability on the defendant's part. Further, the abstract statement of law in the opening lines of Instruction No. 1 was conflicting with and contradictory of defendant's correct Instruction No. 3 and the erroneous statement in Instruction No. 1 was not corrected by defendant's Instruction No. 3. See Stith v. St. Louis Public Service Co. (Mo. Sup.), 251 S.W. (2d) 693, 700; Harrow v. Kansas City Public Service Co. (Mo. Sup.), 233 S.W. (2d) 644.

Instruction No. 1, confusing as it did duties imposed by law in primary negligence cases with duties imposed under the humanitarian doctrine, was erroneous and prejudicial. Reiling v. Russell, supra, 153 S.W. (2d) 6, 8; Murphy v. St. Louis Public Service Co., supra, 244 S.W. (2d) 31, 35; Kelly v. St. Louis Public Service Co. (Mo. Sup.), 248 S.W. (2d) 597, 599; Stith v. St. Louis Public Service Co., supra, 251 S.W. (2d) 693, 699; Mayfield v. Kansas City So. R. Co.,

568

supra, 85 S.W. (2d) 116, 123; Phillips v. Prugh (Mo. App.), 255 S.W. (2d) 84, 88; Wright v. Hummel (Mo. App.), 164 S.W. (2d) 640, 643. The giving of the instruction was reversible error.

It is unnecessary to consider other assignments of error. The judgment is reversed and the cause remanded. All concur.