262 S.W.2d 601 (1953)
PAYDON
v.
GLOBUS.
No. 43747.
Supreme Court of Missouri. En Banc.
November 9, 1953.
Rehearing Denied December 14, 1953.
Walther, Hecker, Walther & Barnard, Harold F. Hecker and George W. Cloyd, St. Louis, for appellant.
Inman, Dyer, Gray & Dreher, Charles E. Gray, St. Louis, for respondent. Byron A. Roche, St. Louis, of counsel.
TIPTON Judge.
This court ordered the transfer of this case from the St. Louis Court of Appeals for a review of its opinion and decision which reversed the judgment of the trial court. That court's opinion is reported at 255 S.W.2d 61. After a careful study of the record, we have concluded that the Court of Appeals' opinion correctly states the facts and we will adopt that part of the opinion without quotation marks.
This is an action growing out of an automobile collision which occurred near noon on March 13, 1949, at a point on U. S. Highway 40 about three miles west of Jonesburg in Montgomery County, Missouri, where the highway runs through an underpass beneath the tracks of the Wabash Railroad Company which cross the highway on a trestle from southeast to northwest.
The trestle, in length, is but barely more than the width of the highway, and is supported at either end by heavy concrete abutments which stand at the edge of the pavement which is approximately 20 feet in width.
The general direction of Highway 40 is east and west, but at the point in question, in order to accommodate itself to the angle of the underpass, the highway curves and goes beneath the trestle in the form of the letter S. In other words, an automobile approaching the underpass from either direction rounds a curve to the left, goes downgrade beneath the trestle and then upgrade and on a curve to the right, where the highway straightens out to either east or *602 west depending upon the direction in which the automobile is proceeding. The south lane of the pavement is of course for eastbound traffic, and the north lane for westbound traffic. On both sides of the underpass the highway runs beneath banks of earth which rise gradually from the edge of the pavement to the level of the surrounding terrain.
The plaintiff is Olive Paydon, the widow of Emery L. Paydon, who was driving the automobile in which she was riding at the time the accident occurred. Paydon died some ten days after the accident as the result of the injuries he had received. The Paydon car was eastbound, and approached the underpass at a speed of about 40 miles an hour. The defendant, Meyer Globus, was westbound, and went under the trestle at a speed which, according to plaintiff's theory of the case, was 30 miles an hour. With defendant was his wife, who was killed in the accident, as well as his two sons, who fortunately escaped with minor injuries.
There had been a light snowfall during the preceding night, but by the time of the accident the highway was dry except for melting snow along the edge of the pavement. At a point some distance west of the underpass the snow on the bank along the south side of the pavement had melted and drained over across the eastbound lane, causing a wet spot to be formed on the pavement about 6 feet square. As the Paydon car passed over this spot it went into a skid in a general curve to the left, which eventually took it across and into the westbound lane, 186 feet west of the underpass, where it came to rest with its front end up against the bank to the north of the road. This position was "almost" at a right angle to the westbound lane, which it completely blocked to westbound traffic. In other words, when the Paydon car came to a stop it was entirely clear of its own eastbound lane, and completely over across the westbound lane, with the front 3 feet extending out beyond the edge of the pavement to the north. Momentarily after coming to a stop it was struck squarely in the right side by defendant's automobile, with the unfortunate consequences already revealed.
Plaintiff brought her action in two counts, the first for damages of $15,000 for the wrongful death of her husband, and the second for damages of $40,000 for personal injuries she herself sustained.
The charge of negligence under which both counts were submitted was identical, that is, that while the Paydon automobile was skidding down the highway out of control, both plaintiff and her husband came into a position of imminent peril of being struck by defendant's automobile, of which fact defendant was or should have been aware in time thereafter, with the means and appliances, at hand, and with safety to himself and the other occupants of his automobile, to have stopped his automobile short of a collision.
A verdict was returned in favor of defendant and against plaintiff on count one of the petition, the count for damages for the husband's wrongful death, but in favor of plaintiff and against defendant for the sum of $6,600 under count two, the count for damages for plaintiff's own personal injuries.
Plaintiff moved for a new trial on count one of her petition, but this being denied, she accepted the result and took no appeal. Defendant moved for a new trial and for judgment on count two of the petition, and this being denied, he took his appeal for the limited purpose of assailing the result on count two.
The appellant contends that the trial court erred in overruling his motion for a directed verdict at the close of all the evidence in the case. The evidence is very indefinite regarding the relative position and movement of the two automobiles just prior to the collision. Respondent did not remember anything after the Paydon car started on the curve leading down into the underpass. She had no eyewitnesses. She relied primarily upon the physical facts as testified to by the sheriff of Montgomery County and a member of the state highway patrol. These two witnesses *603 made an investigation shortly after the collision.
Both of these witnesses testified that the Paydon car was blocking the westbound lane of the highway, in fact, about 3 feet of this car extended north of the north side of the highway. The front end of the Globus car was against the right door of the Paydon car. The right side of the Globus car was off of the north side of the pavement. These officers testified they were able to determine the course of the Paydon car by skid marks on the pavement. From the rear wheels of that car the skid marks could be traced for a distance of 72 feet west in the east lane of the highway to a wet spot which was about 6 feet square. Their testimony was that the skid marks were wider than if they had been made in the normal movement of the car. These marks showed that the automobile had gone in "kind of a circular shape" toward the left, which was also the course of the highway, and turned across the westbound lane in the position it occupied when it was struck. The skid marks became sharper the farther the Paydon car travelled, until this automobile turned rather abruptly into the westbound lane.
A defendant is under no duty to do anything under the humanitarian rule until a plaintiff comes into a position of imminent peril. Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S.W.2d 961; Newman v. St. Louis Public Service Co., Mo., 244 S.W.2d 45.
The peril must be imminent, that is to say, certain, immediate and impending. A likelihood or a bare possibility of injury is not sufficient to create imminent peril. State ex rel. Vulgamott v. Trimble, 300 Mo. 92, 253 S.W. 1014; Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482; Ridge v. Jones, 335 Mo. 219, 71 S.W.2d 713; Blaser v. Coleman, 358 Mo. 157, 213 S.W.2d 420. "The exact point where the position of peril began was for the jury to determine under the evidence." Perkins v. Terminal R. Ass'n, 340 Mo. 868, 102 S.W.2d 915, loc. cit. 923. See also Villinger v. Nighthawk Freight Service, Mo.App., 104 S.W.2d 740; Newman v. St. Louis Public Service Co., supra. However, it is the duty of respondent to establish, by substantial evidence of probative value or by inferences reasonably drawn therefrom, a point at which the jury can find respondent came into a position of imminent peril. Evidence that is merely speculative, a guess or conjecture is not sufficient for a jury to find where the position of imminent peril began. Vietmeier v. Voss, Mo., 246 S.W.2d 785.
Looking only at respondent's evidence, we are unable to find any substantial evidence from which a jury could find at what point the Paydon car came into a position of imminent peril. Under respondent's evidence, the place where the car in which she was riding crossed the center line of the highway is purely a matter of conjecture. As long as this car was in the eastbound lane, of course she was in no danger.
We do not agree with respondent's contention that the skid marks in the eastbound lane were evidence that the Paydon car was out of control while in that lane. The skid marks were wider than they would have been had they been made in the normal movement of the car moving straight ahead. It is to be remembered that this car was turning to the left, the same way the highway curved. It is a physical fact that if the car had not been skidding but going straight, the marks made by the hind wheels would have covered exactly the marks made by the front wheels. But if the front wheels had been turned slightly to the left, then the marks of the hind wheels would have been slightly to the right of center of the marks made by the front wheels, thereby making the two track marks on the pavement wider than if the car had been going straight. And this is true whether the car was skidding or not, if the same degree of turn to the left had been made. From these facts, no inference could be drawn that would charge the appellant with the knowledge that the Paydon car was out of control while in the eastbound lane and would go over and across the westbound lane.
*604 Did appellant's testimony aid the respondent in making a case under the humanitarian doctrine? Appellant testified that he saw the Paydon car for the first time when it was 80 or 90 feet away. He stated the Paydon car was a maximum distance of 30 feet away when it turned across the center line of the highway and he described the turn as "very sharp." He also stated that it would require 60 feet for him to bring his car to a stop. However, he had stated in a deposition taken in another case that he could stop his car in 20 or 30 feet while driving at a speed of 30 miles an hour. Respondent's expert witness testified that the Globus car could be stopped in 43 feet, allowing one-fifth of a second for reaction time.
As previously stated, respondent's evidence did not show where the Paydon car crossed the center line. Appellant's evidence was that the Paydon car was not farther than 30 feet from appellant's car when it crossed the center line of the highway. Since under respondent's evidence it would take 43 feet to stop the Globus car, therefore, there is no liability against appellant shown by respondent's evidence. If we look to appellant's statement in the deposition that he could stop his car in 20 to 30 feet, there would have been but a mere possibility of avoiding the collision, and this is not sufficient to make a submissible case under the humanitarian rule. Yeaman v. Storms, 358 Mo. 774, 217 S.W.2d 495; Claridge v. Anzolone, 359 Mo. 65, 220 S.W.2d 33.
To allow a recovery under the record in this case, we would be forced to accept facts that are based upon mere speculation and conjecture. This we cannot do.
It follows from what we have said that the judgment of the trial court must be reversed. It is so ordered.
All concur except ELLISON, J., who dissents in separate opinion filed.
ELLISON, Judge (dissenting)
In my opinion this case was for the jury. Both automobiles were approaching each other downhill on an S-curve in the highway which passed under a railroad bridge. Respondent's automobile skidded downhill for 72 feet, a considerable part of this distance on its own side of the road, when it struck an icy or wet spot and swung to the left across appellant's right side of the road where his automobile struck the side of the appellant's automobile almost at a right angle. In my opinion a jury reasonably could have found that respondent's sliding automobile was in or entering a position of peril from the fact that it was skidding and out of control. In fact it did not stop until it suddenly swung clear across the road into the path of appellant's automobile.
For these reasons I think the judgment of the trial court should be affirmed.