**KASTEN**

v.

**ST. LOUIS PUBLIC SERVICE CO.**

No. 28791.

St. Louis Court of Appeals,
Missouri.

March 16, 1954.

Correnti, McKee, Rosenblum, Fitzgibbon & Goldenhersh, Rexford H. Caruthers, St. Louis, for appellant.

William H. Wyne, Jr., Salkey & Jones, Carroll J. Donohue and Morton M. Hartz, St. Louis, for respondent.

HOUSER, Commissioner.

This is an action for damages for personal injuries sustained by Albert Kasten while he was a passenger on a streetcar operated by the St. Louis Public Service Company. Tried to a jury, a verdict was returned and judgment rendered thereon for plaintiff and against defendant in the sum of $7,250. On defendant's motion the trial judge set aside the judgment and rendered judgment for defendant on the ground that plaintiff did not make a submissible case, and conditionally ordered a remittitur of $2,000 if the order setting aside the judgment be adjudged erroneous. From the judgment for defendant plaintiff has appealed to this court.

The petition alleged that on July 8, 1949 plaintiff, a passenger on a southbound streetcar, extended his arm through a window of the streetcar and that it was struck by one of defendant's northbound streetcars. There were several assignments of negligence but the case went to the jury solely on negligent failure to warn plaintiff of the approach of the northbound streetcar under the humanitarian doctrine.

Plaintiff testified personally and offered four passengers as witnesses in his behalf, in addition to the medical evidence. Plaintiff testified that he boarded a southbound streetcar on Grand Avenue. It was a warm, clear, sunny day. The streetcar windows were "all the way" open. Plaintiff was looking out of the window to his left—to the east. As the car stopped at the intersection of Grand Avenue and West Pine Street plaintiff saw an old friend of his, one George Olney, standing on the street corner, talking to a man in an automobile. Plaintiff whistled at him, and then extended his left arm out of the streetcar window, waved his hand at his friend, and "hollered" "Hi" or "Hello, George." Plaintiff did not attract Olney's attention immediately. Then Olney looked around, saw plaintiff, waved back at him and said, "Hi, Al." Plaintiff "kept waving, throwing his arm around—left it out there a little while." After having his arm out of the window for "a quarter or a half minute," and when he started to pull his hand in, it was suddenly struck by the front part or front end of a northbound streetcar. Plaintiff saw the northbound streetcar when it hit him. When asked if he saw the operator he testified that the streetcar was going so fast that he "couldn't see the operator." The southbound car was stopped at the time of the accident, according to plaintiff. Plaintiff stated that he was sitting in his seat at the time he was waving, and did not get up to extend his hand out of the window. Plaintiff did not know exactly how far he put his arm out of the window. Prior to the accident plaintiff did not see the northbound streetcar coming, and did not hear any bell, gong, or other sound, or receive any other warning of any type. Plaintiff had on a coat which was between a medium and dark grey color.

The testimony of plaintiff's four passenger-witnesses was generally corroborative of plaintiff's testimony with this difference: according to them the southbound car was moving at the time of the accident, and plaintiff was not seated when he waved.

They said that while he did not "get up entirely" he "kind of stood up a little bit." They added that a northbound dump truck, traveling on Grand Avenue between the northbound safety zone and the curb, passed the southbound streetcar before the accident. Plaintiff was waving as the truck passed by, and about that time plaintiff's hand was struck by the northbound streetcar. One of the passengers testifying as to the length of time plaintiff's hand was out of the window, said that there was time enough for the dump truck to come alongside the southbound streetcar, pass by, and be seen by him through the rear window. As to the position of the southbound streetcar at the time of the accident, one passenger testified that it had moved south a short distance so that a passenger in the rear seat would have been about on a line with the south line of West Pine Street. Another passenger said that the southbound streetcar had "just started" and was "probably" just crossing the street or "maybe" had gone a little farther when the accident happened. No witness saw the northbound streetcar at any time before the accident. One passenger said that it was "alongside" when he first became aware of it. There was no evidence as to the position of the northbound streetcar at the time plaintiff first extended his arm from the window, or during the 15–30 second interval while plaintiff was waving, or at any time until immediately preceding the instant plaintiff's hand was struck. There was no evidence of the speed of the northbound streetcar at any time, except plaintiff's statement that it was going so fast that he could not see the operator. Plaintiff's witnesses as to the speed of the southbound streetcar said that it had "just started up," and "wasn't going too fast, because it hadn't had time to speed up." The operator of the southbound streetcar, testifying on behalf of defendant, stated that it was going about 10–15 miles per hour "at the most" and was slowing down for the Laclede Avenue stop at the time. There was no evidence as to the speed of the dump truck. There was some intimation that plaintiff had withdrawn his hand to some extent at the time he was struck, in the following answer: "A. I was hit when I started to pull my hand in. That is why it hit me here, otherwise it would have hit me up further." ("Here" and "up further" were left unexplained.) There was no evidence as to the length of plaintiff's arm, or whether it was extended full length or bent at the elbow a part or all of the time, or the distance plaintiff reached out in the process of waving, or the manner in which he waved his hand in the process, or whether the extremity of his reach varied or remained constant during the 15–30 second interval, or the length of time his arm remained in the position and posture in which it was at the moment of impact.

Defendant produced the operator of the southbound streetcar, one passenger, and its superintendent of railway maintenance as its witnesses. The operator of the southbound streetcar did not notice any northbound streetcar prior to the accident, nor did he remember the sounding of any gong on his car or on any other car in the vicinity between West Pine and Lawton Avenue, which was the first street south of West Pine. He testified that there is nothing to obstruct the view of an operator of a northbound streetcar between Lawton Avenue and West Pine. The passenger testified that plaintiff had his hand out of the window "no more than a second." Defendant's superintendent of railway maintenance testified that the distance between two passing streetcars is 14 inches. The streetcars running on Grand Avenue at that time were 46 foot streamliners, tapered at the front and rear. The operator sits at the left front of a streetcar in a position approximately 22 inches from the left side of the car and has "pretty good visibility all the way around." There were three ⅜ inch steel bars at the windows of the southbound streetcar, spaced 2⅜ inches apart, and there was a space of 11½ inches from the top bar to the bottom of the open window.

The decisive question is whether plaintiff made a submissible case of negligent failure to warn under the humanitarian doctrine. The basic element of liabil-

ity under that doctrine is the existence of a position of "imminent peril," by which is meant certain, immediate and impending peril, and not remote, uncertain or contingent peril. Paydon v. Globus, Mo.Sup., 262 S.W.2d 601, and cases cited; Paydon v. Globus, Mo.App., 255 S.W.2d 61. Mere likelihood or possibility of injury is not alone sufficient to give rise to a situation of imminent peril. Lefkowitz v. Kansas City Public Service Co., Mo.Sup., 242 S.W.2d 530. The point at which the jury can find that the injured person came into a position of imminent peril must be established by evidence of probative value or by inferences reasonably drawn therefrom. Speculative and conjectural evidence is not sufficient for a jury to find where the position of imminent peril began. Paydon v. Globus, supra, 262 S.W.2d loc. cit. 603.

The time when plaintiff's hand entered the zone of imminent peril is left to conjecture. Plaintiff testified that he waved for a time period of 15–30 seconds, and that he was struck when he started to pull his hand in, but he did not testify as to the length of time his arm was extended into the path of the oncoming streetcar prior to the time of the impact, or how far his hand was extended at any particular time. For all that appears it is quite possible that the extension of plaintiff's arm by which his hand was projected into a position of imminent peril may have occurred during the last second or fraction of a second prior to the impact. The operator of the northbound car, seeing or being charged with seeing the waving hand not yet in a position of imminent peril, would have had the right to assume that plaintiff would not extend his hand farther and into the danger path, unless plaintiff's conduct or the circumstances indicated that plaintiff was oblivious and intended to farther extend his arm. Until that intention became apparent the operator owed plaintiff no duty to warn. Elkin v. St. Louis Public Service Co., 335 Mo. 951, 74 S.W.2d 600. There was no evidence from which that intention could be inferred. From the fact of injury we know that *at some time* plaintiff extended his hand into a position of imminent peril but unfortunately for plaintiff we cannot ascertain from this record *when* with reference to the time of actual impact plaintiff thus extended his hand. It is an indispensable prerequisite to recovery on the theory of humanitarian failure to warn that plaintiff introduce facts from which the jury can find that there was a sufficient interval between the time plaintiff came into a position of imminent peril and the time of impact, during which the operator of the oncoming vehicle saw or could have seen plaintiff in his perilous position and could have issued a warning which would have been effective to arrest the movement of plaintiff (if he was approaching the danger path) or to enable him to extricate himself (if he was already in the danger path). Jordan v. St. Joseph Ry., Light, Heat & Power Co., 335 Mo. 319, 73 S.W.2d 205. That time interval was not shown, nor were any facts proved from which it reasonably can be inferred. There is a complete absence of testimony in this record as to the speed of the northbound streetcar, except as noted above, or its distance from the point of impact at any particular time.

Since plaintiff failed to make a case properly submissible under the humanitarian rule, the judgment of the circuit court was correct and the Commissioner recommends that it be affirmed.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, affirmed.

ANDERSON, P. J., BENNICK, J., and LAWRENCE HOLMAN, Special Judge, concur.