Leo FARMER, Plaintiff-Appellant,

v.

Oscar TAYLOR, Defendant-Respondent.

No. 7551.

Springfield Court of Appeals.

Missouri.

March 22, 1957.

Motion for Rehearing or to Transfer Overruled May 2, 1957.

Ward & Reeves, Caruthersville, for plaintiff-appellant.

Blanton & Blanton, Sikeston, for defendant-respondent.

STONE, Judge.

In this jury-tried action for personal injuries, plaintiff had judgment for $7,200; but, upon defendant's timely after-trial motion under Section 510.290 RSMo 1949, V.A.M.S., the trial court set aside the judgment for plaintiff and entered judgment for defendant in accordance with his motion for a directed verdict at the close of the entire case. Upon this appeal by plaintiff, the determinative issue is whether plaintiff made a submissible case under the only theory presented in his instructions, i. e., defendant's alleged negligence under the humanitarian doctrine for failure to stop or slacken the speed of a GMC pickup then being driven by him. In resolving this issue, we consider the evidence in the light most favorable to plaintiff and accord to him the benefit of all favorable inferences reasonably deducible therefrom. De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, 633(3).

When the accident occurred about 1:15 P.M. on October 22, 1955, plaintiff, "a house mover" for eighteen years, was engaged in moving a four-room frame house owned by a Mrs. Turnbough (hereinafter referred to simply as the house) from its location behind (and north of) a tavern on the north side of Main Street, an east-and-west business street in Marston, New Madrid County, Missouri. The house was being moved in a westerly direction toward an intersecting north-and-south street, known as McCarty Street, which had a graveled roadway estimated at thirty to fifty feet in width, no curbing or sidewalk on either side, no drainage ditch along the

west side, and only a shallow north-and-south drainage ditch, "not over a foot deep," along the east side. In his moving operation, plaintiff parked his 1942 International "bob truck," headed in a westerly direction and with the wheels "scotched," at a point west of McCarty and behind (and north of) Fawcett's Grocery, which stood on the northwest corner of the intersection of Main and McCarty and fronted on Main. Some two to four feet behind (and east of) the "bob truck" and tied to it with a chain, plaintiff parked a borrowed 1948 International "wrecker truck" equipped with a crane and winch and described as "a rusty looking red" in color. The wrecker also was headed toward the west (crosswise of McCarty) with its rear wheels, likewise "scotched * * * in order to keep it from sliding back," in the middle of McCarty.

The house, "jacked up" and placed on three sets of "tandem dollies," thirty inches in height, was being moved by means of a heavy cable (hereinafter referred to as the pulley cable) extending from the wrecker winch in an easterly direction across McCarty to a pulley hooked to a tongue on "the hitch cable," which, in turn, was attached to the sills of the house—"one chain from one sill and a chain from the other sill." Since the wrecker winch was running at the time of accident, the house was moving but it still was "about forty feet" east of the east edge of McCarty. With the moving operation thus in progress, the west half of McCarty was blocked by the wrecker, and the east half of McCarty was blocked by the pulley cable, which was rusty brown in color, about three feet above ground level, and concededly without any warning papers, clothes or rags on it.

Defendant, a colored man fifty years of age, then working for one Leo Fisher at "a cotton office" in the north end of Marston, was sent after some bolts. Using his employer's GMC pickup on this errand, defendant purchased the bolts at a store on the south side of Main Street opposite the tavern. Starting his return trip to the cotton office, defendant proceeded west on Main to the intersection of Main and McCarty, made a right-hand turn to the north onto McCarty, and traveled "about one-third of a block" before running into the pulley cable. Defendant admitted that, prior to the accident, he did not see the cable, the wrecker, the house or plaintiff, did not hear any warning (although plaintiff's evidence was that "there was two boys out there yelling and waving traffic" and that "lots of people hollered"), and did not apply the brakes on the GMC pickup. With respect to the speed of defendant's pickup, the *only* evidence adduced by *plaintiff* was the estimate of his witness, James Muse, Jr., operator of the wrecker winch, that the pickup was traveling thirty-five to forty miles per hour when it struck the pulley cable. There was no showing as to the distance within which the pickup, traveling at that speed, could have been stopped. *Defendant* estimated his speed at eighteen to twenty miles per hour and thought that he could have stopped within thirty to forty feet.

At the time of accident, plaintiff was standing, "about six feet" as he said on direct examination, or "two, three or four feet" as he agreed on cross-examination, in front (and west) of the house. Thus, plaintiff was "approximately thirty-five feet east of the east edge" of McCarty. "Facing the dolly" and with his back to McCarty, he never saw defendant's pickup. Immediately prior to his injury, he had "dropped down to put a board underneath the front dolly wheel"; but, when he heard what "sounded like four or five hollering"—"just hollering to stop the man from going through the cable"—he "raised up." When the pickup hit it, the pulley cable broke and "that block" (apparently referring to the pulley) struck plaintiff on the right side of his chest and abdomen.

■ Although no case has been cited or found in which our humanitarian doctrine has been invoked under analogous circum-

stances, we *assume* for the purposes of this opinion (*without, however, so deciding or holding*) that, as plaintiff here contends, such doctrine might be extended to encompass plaintiff's *discoverable* peril on private property some thirty-five feet from the public street, *if* the evidence otherwise properly permitted a finding of all essential elements of a cause of action under that doctrine. The first and basic, if not the chief, fact of liability under the humanitarian doctrine is that plaintiff must have been in a position of imminent peril;[1] and, by repeated judicial declarations, it has been settled beyond room for argument that: "The peril truly must be imminent— that is, certain, immediate, and impending; it may not be remote, uncertain or contingent. A likelihood or bare possibility of injury is not sufficient to create imminent peril."[2]

■■ The second essential element of a cause of action under the humanitarian doctrine is that defendant must have had (either actual or, in a *discoverable* peril case, constructive) notice of plaintiff's position of imminent peril [Banks v. Morris & Co., 302 Mo. 254, 267, 257 S.W. 482, 484 (2)]; and, from an examination of many cases, it is manifest that whether and when defendant is charged with such notice depends upon the *reasonable appearances* of the situation confronting him. For, our courts have said time and again in humanitarian cases that one "'*must act on reasonable appearances*'"[3] and, even more specifically, that "(*i*)*t is the reasonable appearances of the situation that imposes the duty to act.*"[4] (All emphasis herein is ours.) This is true whether plaintiff is oblivious or not. Hayes v. Coca-Cola Bottling Co. of St. Louis, Mo., 269 S.W.2d 639, 645(9).

■ Imputing to defendant in the instant case (for the purposes of this opinion) knowledge of the entire situation immediately prior to the accident, *insofar as developed in and reflected by the transcript before us,* our initial inquiry becomes whether the *reasonable appearances* of that situation, *as divulged by the record,* were such as to impose upon defendant a duty to act by charging him with constructive notice of the basic element of liability under the humanitarian doctrine, i. e., that plaintiff was in a position of imminent peril. Plaintiff's distance from, and position relative to, the pulley cable, pulley, tongue and hitch cable obviously would be vital and determinative in any such inquiry; but, in-

1. Banks v. Morris & Co., 302 Mo. 254, 267, 257 S.W. 482, 484; Hendrick v. Kurn, 352 Mo. 848, 850, 179 S.W.2d 717, 719; Blaser v. Coleman, 358 Mo. 157, 160, 213 S.W.2d 420, 421.

2. Blaser v. Coleman, supra, 213 S.W.2d loc. cit. 421(2); Chenoweth v. McBurney, 359 Mo. 890, 894, 224 S.W.2d 114, 117(3); Dister v. Ludwig, 362 Mo. 162, 170, 240 S.W.2d 694, 699(8); Lilly v. Boswell, 362 Mo. 444, 452, 242 S.W.2d 73, 75(2); Kelley v. St. Louis Public Service Co., Mo., 248 S.W.2d 597, 602; Wilson v. Toliver, Mo., 285 S.W.2d 575, 583 (13).

3. See v. Wabash R. Co., 362 Mo. 489, 496, 242 S.W.2d 15, 19(6); Knorp v. Thompson, 352 Mo. 44, 62, 175 S.W.2d 889, 900; Perkins v. Terminal R. Ass'n of St. Louis, 340 Mo. 868, 878, 102 S.W.2d 915, 919(3); Womack v. Missouri Pac. R. Co., 337 Mo. 1160, 1167, 88 S.W.2d 368, 371; Allen v. Kessler, Mo., 64 S.W.2d 630, 633; Bray v. St. Louis-San Francisco Ry. Co., Mo.App., 236 S.W. 2d 758, 767(12); Ramel v. Kansas City Public Service Co., Mo.App., 187 S.W. 2d 492, 496(7).

4. Turbett v. Thompson, 363 Mo. 577, 581, 252 S.W.2d 319, 321; Ukman v. Hoover Motor Express Co., Mo., 269 S.W.2d 35, 38(4); Hayes v. Coca-Cola Bottling Co. of St. Louis, Mo., 269 S.W.2d 639, 642 (4). Consult also Wabash R. Co. v. Dannen Mills, Inc., Mo., 288 S.W.2d 926, 929(4); Romandel v. Kansas City Public Service Co., Mo., 254 S.W.2d 585, 592 (17); Stith v. St. Louis Public Service Co., 363 Mo. 442, 448, 251 S.W.2d 693, 696–697(6), 34 A.L.R.2d 972; Knight v. Richey, 363 Mo. 293, 300, 250 S.W.2d 972, 976(7); Silver v. Westlake, Mo., 248 S.W.2d 628, 632(2); Teague v. Plaza Express Co., 354 Mo. 582, 190 S. W.2d 254, 256(2).

formation on these subjects is conspicuous solely by its absence. The transcript on appeal, which we must take as it comes to us [Bennett v. Wood, Mo., 239 S.W.2d 325, 327(2)], reveals only that plaintiff was two to six feet in front of the house, and that, immediately before the accident, he had "dropped down to put a board underneath the front dolly wheel." We search in vain for any evidence, either direct or inferential, as to the width of the front of this four-room frame house, as to what portion of the front of the house plaintiff was facing (e. g., the center or one corner), as to the location of "the front dolly wheel" (near which plaintiff must have been stooping as defendant's pickup approached the pulley cable), as to the distance from the front of the house to the tongue or pulley, or as to whether plaintiff was in front of or behind the hitch cable or the tongue, whose lengths are not indicated. In short, the record affords no basis for any finding as to where plaintiff was with reference to the pulley cable which broke or the pulley which struck him.

▋ The sound and oft-repeated statement (of which the authorities cited by plaintiff remind us) that the precise place where, and time when, one *comes into* a position of *imminent peril* is for the jury, appears and finds application in cases in which a *moving* plaintiff *comes into* the pathway of defendant's moving vehicle;[5] but, even in cases of that character, whether plaintiff *comes into* a position of imminent peril is not always for the jury. Pay-

don v. Globus, Mo., 262 S.W.2d 601, 603; Kasten v. St. Louis Public Service Co., Mo.App., 266 S.W.2d 1, 4(3). As in other actions, the plaintiff in a humanitarian case must establish every essential element of his theory of submission by substantial evidence of probative value or by inferences reasonably deducible therefrom [Vietmeier v. Voss, Mo., 246 S.W.2d 785, 787(1); Harmon v. Thompson, Mo.App., 226 S.W.2d 102, 104(1)], and a judgment for plaintiff on a humanitarian submission may not stand where it rests solely upon speculation, conjecture and surmise,[6] either with respect to the basic element of plaintiff's position of imminent peril[7] or with respect to defendant's ability, after notice thereof, to avert the accident with the means at hand.[8]

▋ Of course, we know from the fact of injury, itself, that plaintiff was in a position fraught with perilous possibilities. But, it is clear that proof of plaintiff's injury did not establish his prior position of imminent peril *within the contemplation of the humanitarian doctrine*, for, "(i)f such were a sound theory, then it could be urged that all persons whose injuries were occasioned by the wrongful act or conduct of another were theretofore in 'imminent peril' within the meaning of the term under our humanitarian rule." McClanahan v. St. Louis Public Service Co., 363 Mo. 500, 504 (banc), 251 S.W.2d 704, 706–707. Although we have extended the humanitarian doctrine further than many other states

5. See Wabash R. Co. v. Dannen Mills, Inc., supra, 288 S.W.2d loc. cit. 929(5); Catanzaro v. McKay, Mo., 277 S.W.2d 566, 571(6); Welch v. McNeely, Mo., 269 S.W.2d 871, 876(10); Anderson v. Prugh, 364 Mo. 557, 563, 264 S.W.2d 358, 362; Stith v. St. Louis Public Service Co., supra, 251 S.W.2d loc. cit. 698 (7); Silver v. Westlake, supra, 248 S.W. 2d loc. cit. 632(1); Harrington v. Thompson, Mo., 243 S.W.2d 519, 525(8).

6. Vietmeier v. Voss, Mo., 246 S.W.2d 785, 789(10); Yeaman v. Storms, 358 Mo. 774, 779, 217 S.W.2d 495, 499; Bauer v.

Wood, 236 Mo.App. 266, 270, 154 S.W.2d 356, 359(6).

7. Paydon v. Globus, Mo., 262 S.W.2d 601, 603; Hendrick v. Kurn, supra, 179 S.W. 2d loc. cit. 719(6); Kasten v. St. Louis Public Service Co., Mo.App., 266 S.W. 2d 1, 4(3).

8. Stephens v. Thompson, Mo., 293 S.W.2d 392, 395(7–9); Berry v. McDaniel, Mo. App., 269 S.W.2d 666, 670–671(5–8); Thomas v. Aines Farm Dairy, Mo.App., 257 S.W.2d 228, 235(14); Swain v. Anders, 235 Mo.App. 125, 140 S.W.2d 730, 736(9).

[Mayfield v. Kansas City Southern Ry. Co., 337 Mo. 79, 91, 85 S.W.2d 116, 123], in fact "far beyond its original concept," it still may not be applied to "every state of facts resulting in injuries from moving objects" [Smith v. Siedhoff, Mo. (banc), 209 S.W.2d 233, 236(2)], and the trier of the facts should not be permitted to fix liability in the absence of substantial evidence tending to prove that defendant reasonably should have realized that plaintiff was in a position of imminent peril in time thereafter to have avoided the injury by effective action. Roberts v. Chicago, B. & Q. R. Co., Mo. App., 266 S.W.2d 38, 44(9). We are unable to escape the conclusion that, on the meager, inadequate and incomplete factual showing in the case at bar, any determination as to whether the *reasonable appearances* of the entire situation were such as to charge defendant with the duty to act, i. e., with constructive notice that plaintiff was in a position of imminent peril, necessarily would rest on nothing more tangible or substantial than rank speculation, unbridled conjecture and sheer surmise. Thus, for want of proof of the basic element of imminent peril, plaintiff did not make a submissible case under the humanitarian doctrine and the action of the trial court in setting aside the verdict and judgment for plaintiff and in entering judgment for defendant was proper.

Having so concluded, we need not rule other questions raised, excepting only plaintiff's contention that, in any event, the cause should be remanded for a new trial on *primary* negligence. In arguing this point, plaintiff ignores the fact that *he is the appealing party,* and that this is *not* a case (such as those cited by plaintiff's counsel) in which our discretionary power to remand is invoked upon *defendant's* appeal from a judgment for *plaintiff* [e. g., Blaser

v. Coleman, 358 Mo. 157, 163, 213 S.W.2d 420, 423(8)], or in which another trial is sought to afford to a plaintiff with an apparently meritorious cause of action, *who misconceived from the outset the applicability of his pleaded theory,* an opportunity to plead an appropriate theory *by amendment of his petition.* East v. McMenamy, Mo., 266 S.W.2d 728.[9]

The transcript before us reflects coolly-calculated choices by capable counsel, who, on the morning of trial, voluntarily dismissed as to defendant Fisher, the white employer, and thereafter proceeded against defendant Taylor, the colored driver, and who emphatically and effectively impressed the jurors with the magnitude of Taylor's alleged dereliction, not only by presenting evidence on *all* pleaded assignments of primary negligence but also by emphasizing such evidence in closing arguments. Careful consideration of the entire record convinces us that deliberate submission to the jury on the sole ground of alleged humanitarian negligence was clearly a matter of legal strategy by which informed counsel sought "to secure the strategic advantage of avoiding the hazard of meeting the defense of contributory negligence." Smith v. St. Louis Public Service Co., 364 Mo. 104, 110 (banc), 259 S.W.2d 692, 696.

Plaintiff having so chosen purposefully to abandon pleaded primary negligence [Welch v. McNeely, Mo., 269 S.W.2d 871, 875(1), and cases there cited], the trial court's inquiry on defendant's after-trial motion under Section 510.290 RSMo 1949, V.A.M.S., was whether plaintiff made a submissible case on his only submitted assignment [Girratono v. Kansas City Public Service Co., Mo.App., 243 S.W.2d 539, 543(4), Id., 363 Mo. 359, 251 S.W.2d 59], and our inquiry on this appeal likewise

9. Contrast also Houfburg v. Kansas City Stock Yards Co. of Maine, Mo., 283 S.W.2d 539, 546–548(15–17); O'Neal v. Mavrakos Candy Co., 364 Mo. 467, 263 S.W.2d 430, 432(6), Id., Mo.App., 255 S.W.2d 138, 142(6); Cudney v. Mid-continent Airlines, Inc., 363 Mo. 922, 254 S.W.2d 662, 667(9); McClanahan v. St. Louis Public Service Co., 363 Mo. 500, 251 S.W.2d 704, 709(7); Stone v. Farmington Aviation Corp., 360 Mo. 1015, 232 S.W.2d 495, 499; Shafer v. Southwestern Bell Telephone Co., Mo., 295 S.W.2d 109, 116–117(18).

should be so limited.[10]  Having concluded that plaintiff did not make a submissible case under our humanitarian doctrine, the trial court properly set aside the judgment for plaintiff and entered judgment for defendant; and, being convinced, as we are, that plaintiff's submission was a matter of legal strategy rather than a "misadventure," the action of the conscientious trial judge should not be disturbed.[11]

The judgment for defendant is affirmed.

McDOWELL, P. J., and RUARK, J., concur.

10. Edelen v. St. Louis Public Service Co., Mo.App., 279 S.W.2d 188, 191(4); Bean v. St. Louis Public Service Co., Mo.App., 233 S.W.2d 782, 785–786; Bowers v. Columbia Terminals Co., Mo. App., 213 S.W.2d 663, 667(3).

11. Consult Hunt v. Chicago, M., St. P. & P. R. Co., 359 Mo. 1089, 225 S.W.2d 738, 741–742(4); Borrson v. Missouri-Kansas-Texas R. Co., 351 Mo. 229, 251–253, 172 S.W.2d 835, 850–851; Stephens v. Thompson, Mo., 293 S.W.2d 392; Kasten v. St. Louis Public Service Co., supra; Bean v. St. Louis Public Service Co., supra.