Alta BATSON (Bays), Plaintiff-Respondent,

v.

Myrton E. ORMSBEE, Defendant-Appellant.

No. 7587.

Springfield Court of Appeals.

Missouri.

July 5, 1957.

Motion for Rehearing or to Transfer Overruled Sept. 6, 1957.

Wangelin & Friedewald, Poplar Bluff, for defendant-appellant.

Bloodworth & Bloodworth, Poplar Bluff, for plaintiff-respondent.

STONE, Judge.

As Myrton E. Ormsbee, defendant herein, south-bound in his 1948 Pontiac automobile on Highway 53 in Butler County, Missouri, was making a left turn toward the east into the private driveway to his farm home, his automobile was struck "about the rear of the left front fender" by the right front portion of a south-bound 1953 Pontiac automobile then being driven by William C. Batson, plaintiff's husband. In this accident about 11:55 A.M. on February 28, 1955, Batson sustained "a chest injury," evidenced by "severe pain in his chest" and three fractured ribs on his right side; and, on April 25, 1955, he died from "reoccurrence of his heart failure" (originally suffered in September, 1954), to which reoccurrence his attending physician thought that the chest injury contributed; In this action for alleged wrongful death of her husband, Alta Batson (now Bays) obtained a judgment, from which defendant appeals.

The cause was submitted solely upon alleged humanitarian negligence in fail-

ure "to turn and swerve * * * to the right," and the only issue on appeal is whether plaintiff made a submissible case on that theory. In resolving that question, we consider the evidence in the light most favorable to plaintiff and accord to her the benefit of all favorable inferences reasonably deducible therefrom [De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628, 633 (3)], bearing in mind, however, that she may not have the benefit of defendant's evidence contradictory of her own and at war with her fundamental theory of the case. Fisher v. Gunn, Mo., 270 S.W.2d 869, 873–874, and cases there collected.

Highway 53 has a two-lane blacktop pavement, about twenty feet in width, with a white center line. The road is practically level and perfectly straight, "as far as you can see in either direction" from the point of collision. At the time of accident, the pavement was dry. The only witnesses upon trial, whose testimony bore upon the issue of negligence, were W. E. Kelm (a passenger in the Batson automobile), Sgt. John N. Crow (the investigating officer of the Missouri State Highway Patrol but not an eyewitness), and defendant Ormsbee. Plaintiff's theory of the case, as developed by witness Kelm, follows.

The Batson automobile had followed the Ormsbee automobile for four or five miles, with both vehicles traveling about thirty-five miles per hour and with Batson "something like half a quarter" behind Ormsbee. After both Ormsbee and Batson had passed around two other southbound vehicles and were "something like half a mile" ahead of them, Batson "drove up faster and got closer and * decided to go on around" Ormsbee. When Batson "got up pretty close" to the Ormsbee automobile, within "something like fifty feet" (as Kelm said on direct examination) or "something like a hundred feet" (as he thrice averred on cross-examination), Batson turned into the left-hand or east lane of Highway 53 to pass around the Orms-

bee automobile, which was then in the right-hand or west lane and was two hundred to two hundred fifty feet north of the Ormsbee driveway. Batson "was driving about thirty-five" when he turned into the left-hand or east lane, but "he stepped on up to go around" Ormsbee, so that "he (Batson) was driving between forty and fifty." With the overtaking Batson automobile twenty-five to thirty feet behind the Ormsbee automobile, Batson (so Kelm said) "tooted his horn a couple of times." Illustrative of the confusion and inconsistency in Kelm's testimony, we observe that, when asked how far the Ormsbee automobile was from the driveway at that time, Kelm first answered "well, he was getting right close to the driveway," later said "well, I don't know to be exactly," and finally hazarded an estimate of "about two hundred and fifty feet." However, Kelm definitely stated that the Ormsbee automobile was still in the right-hand or west lane of Highway 53.

Plaintiff's argument on appeal is anchored to, and dependent upon, the factual premise that Ormsbee started to turn to the left or east when his automobile was about one hundred fifty feet north of the driveway. One isolated, unresponsive, petulant answer in Kelm's cross-examination so suggested; but, taking his testimony as a whole, it is clear that his final and actual account, which we must accept [consult Hoffman v. Illinois Terminal R. Co., Mo. App., 274 S.W.2d 591, 593(1); Carrow v. Terminal R. Ass'n of St. Louis, Mo.App., 267 S.W.2d 373, 378–379; Partney v. Agers, 238 Mo.App. 764, 772, 187 S.W.2d 743, 747(1)], was that Ormsbee was "about twenty-five feet" north of his driveway "when he turned, first turned over." And, regardless of the precise distance between the Ormsbee automobile and the driveway at the time of Ormsbee's turn, the more important and essentially determinative fact established by Kelm, beyond room for argument, was that, when Ormsbee first turned to the left or east, the Batson automobile was "somewhere along

about the side of" the Ormsbee automobile (as Kelm said on two occasions), or the front end of the Batson automobile was "about the middle of his (Ormsbee's) car" or "somewhere along in front of the hind wheels" of the Ormsbee automobile or "something about the back end" of that vehicle (as Kelm, from time to time, testified). At the moment of impact, the left wheels of the Batson automobile were just off the east edge of the pavement, and the front end of the left-turning Ormsbee automobile was in the east lane but had not reached the east shoulder. Although declining to estimate Ormsbee's speed when he attempted the left turn, Kelm knew that "he (Ormsbee) never slowed down too much to turn in." Ormsbee's estimate of his speed as he turned was fifteen to eighteen miles per hour.

■ The first and basic fact of liability under the humanitarian doctrine is a position of imminent peril. Banks v. Morris & Co., 302 Mo. 254, 267, 257 S.W. 482, 484; Hendrick v. Kurn, 352 Mo. 848, 850, 179 S.W.2d 717, 719; Anderson v. Prugh, 364 Mo. 557, 565, 264 S.W.2d 358, 364(8). "The peril truly must be imminent—that is, certain, immediate, and impending; it may not be remote, uncertain or contingent. A likelihood or bare possibility of injury is not sufficient to create imminent peril." Blaser v. Coleman, 358 Mo. 157, 160, 213 S.W.2d 420, 421(2); Kelley v. St. Louis Public Service Co., Mo., 248 S.W.2d 597, 602; Wilson v. Toliver, Mo., 285 S.W.2d 575, 583(13). It is only when such imminent peril arises that the humanitarian doctrine, blotting out antecedent negligence, seizes upon the then existing situation and imposes a duty *thereafter* to exercise proper care to avoid infliction of the threatened injury. Welch v. McNeely, Mo., 269 S.W.2d 871, 876(6); McClanahan v. St. Louis Public Service Co., 363 Mo. 500, 507, 251 S.W.2d 704, 708; Johnson v. St. Louis Public Service Co., 363 Mo. 380, 251 S.W.2d 70, 75(6). Of course, it is essential to liability under the humanitarian doctrine that, after (either actual or, in a discoverable peril case, constructive) notice of plaintiff's position of imminent peril, defendant must have had the present ability with the means at hand to have averted the impending harm without injury to himself or others. West v. St. Louis-San Francisco R. Co., Mo., 295 S.W.2d 48, 52(5); Wapelhorst v. Lindner, Mo., 269 S.W.2d 865, 871(8); Knight v. Richey, 363 Mo. 293, 300, 250 S.W.2d 972, 976(5).

■ The plaintiff in a humanitarian case, as in other actions, must establish every essential element of his theory of submission by substantial evidence of probative value or by inferences reasonably deducible therefrom [Vietmeier v. Voss, Mo., 246 S.W.2d 785, 787(1); Harmon v. Thompson, Mo.App., 226 S.W.2d 102, 104 (1)], and a judgment for plaintiff on a humanitarian submission may not stand where it rests solely upon speculation, conjecture and surmise [Yeaman v. Storms, 358 Mo. 774, 779, 217 S.W.2d 495, 499; Bauer v. Wood, 236 Mo.App. 266, 270, 154 S.W.2d 356, 359(6)], either with respect to the basic element of plaintiff's position of imminent peril [Paydon v. Globus, Mo., 262 S.W.2d 601, 603; Kasten v. St. Louis Public Service Co., Mo.App., 266 S.W.2d 1, 4(3)] or with respect to defendant's ability, after notice thereof, to have averted the accident with the means at hand. Stephens v. Thompson, Mo., 293 S.W.2d 392, 395(7–9); Meese v. Thompson, 344 Mo. 777, 783, 129 S.W.2d 847, 850; Berry v. McDaniel, Mo.App., 269 S.W.2d 666, 670–671(5–8); Swain v. Anders, 235 Mo.App. 125, 133, 140 S.W.2d 730, 736(9).

■ Batson did not come into a position of imminent peril until the moment that Ormsbee began to turn his automobile to the left or east. Napier v. Ferris, Mo. App., 159 S.W.2d 364, 366–367; Liles v. Associated Transports, 359 Mo. 87, 96, 220 S.W.2d 36, 40. See also Phillips v. Henson, 326 Mo. 282, 289, 30 S.W.2d 1065, 1067; McCoy v. Home Oil & Gas Co.,

Mo.App., 60 S.W.2d 715, 725; Vandenberg v. Snider, Mo.App., 83 S.W.2d 201, 202; Hagerman v. Rodgers, Mo.App., 101 S.W.2d 526, 528–529. When Ormsbee so turned, the front end of the Batson automobile, traveling at forty to fifty miles per hour, was (according to plaintiff the most favorable view of the evidence as stated in the language of her counsel) "about even with the rear end of the Ormsbee car." We are convinced that any determination that Ormsbee *thereafter* had the present ability with the means at hand to have averted the impending injury would rest on nothing more tangible or substantial than rank speculation, unbridled conjecture and sheer surmise. "(R)egardless of whether (Ormsbee) may or may not have been guilty of negligence in other conceivable particulars, he was in any event not guilty of actionable negligence within the contemplation of the humanitarian doctrine." Napier v. Ferris, supra, 159 S.W.2d loc. cit. 366. Although no two tort cases are jelled in the same factual mold, there is such singular and striking factual similarity between the instant case and the Napier case, supra, that the comments and conclusion in the latter are particularly pertinent and persuasive here. Contrast ·the factual situation in Liles v. Associated Transports, supra, 220 S.W.2d loc. cit. 39–40 (upon which instant plaintiff primarily relies), where defendant's slowly-moving south-bound truck "was on the west shoulder of the road, with only its left rear wheels still on the pavement" and plaintiff's south-bound automobile was " 'approximately 150 to 200 feet back' " when plaintiff came into imminent peril as the truck driver turned, under which circumstances the ability of the truck driver to have averted the injury was for the jury.

■ We have not overlooked the testimony of the investigating officer that he found "forty-eight steps of marks" leading to "the final resting place" of the Batson automobile in the east ditch south of the driveway, and that, of these marks, "thirty-five steps" were on the pavement north of the apparent point of impact, which was "approximately twenty-four feet (or eight steps) north of the *center* of the private driveway." However, this evidence affords no support for the factual hypothesis here urged by plaintiff, i. e., that Ormsbee began to turn about one hundred fifty feet north of the driveway, particularly in view of the positive statement of the officer that the marks "started approximately near astraddle of the center line," and the testimony of witness Kelm, when asked whether Batson applied his brakes before Ormsbee started to turn, "yes, he (Batson) seen he (Ormsbee) was going to turn across or something—I don't know why he did * * *."

Although plaintiff has rested her case upon the sole contention that she is entitled to recover under the humanitarian doctrine and has sought no remand in the event of an adverse finding on that issue, we have considered carefully whether another trial might be justified. Our conclusion is that it would not. The transcript shows that this case has been tried twice, the jury having been unable to agree upon a verdict at the first trial. Plaintiff pleaded both primary and humanitarian negligence; but, having presented and obtained the benefit of all available evidence, she deliberately chose to abandon primary negligence by submission on humanitarian negligence only [Welch v. McNeely, supra, 269 S.W.2d loc. cit. 875(1), and cases there cited], for the purpose, no doubt, of escaping implications of contributory negligence inherent, for example, in the evidence that the Batson automobile skidded on dry pavement for "thirty-five steps" but yet was traveling (according to Kelm) "between forty and fifty when we hit him (Ormsbee)," in the statement of the investigating officer that Batson had said, immediately following the collision, that "he didn't blow his horn," and in Ormsbee's testimony that he had béen indicating his intention to turn by operation of the signal light on his automobile for two hun-

dred yards before he reached the driveway. Convinced (as we are) that plaintiff's submission on humanitarian negligence was a calculated choice by capable counsel and thus was a matter of legal strategy, an order remanding the case is not warranted. Smith v. St. Louis Public Service Co., 364 Mo. 104 (banc), 259 S.W.2d 692; Farmer v. Taylor, Mo.App., 301 S.W.2d 429, 434–435, and cases there cited.

The judgment for plaintiff is reversed without remand.

McDOWELL, P. J., and RUARK, J., concur.

### On Motion for Rehearing

STONE, Judge.

Believing, as we do, that there can be no excuse for factual misstatement or inaccuracy, these supplemental comments are prompted by plaintiff's motion for rehearing which charges, in substance and effect, that we have misinterpreted, if not misstated, the evidence. Plaintiff presses her contention that Ormsbee turned to the left or east when his automobile was about one hundred fifty feet north of the driveway, but the final account of witness Kelm on this subject is reflected in the following testimony:

"A. Mr. Ormsbee was driving on the right at the time he made the left hand turn.

"Q. Well, how far from his driveway were you then?

"A. About twenty-five feet.

"Q. About twenty-five feet?

"A. When he turned, first turned over."

On the more important and essentially determinative issue as to the location of the Batson automobile with respect to the Ormsbee automobile when Ormsbee first turned to the left or east, plaintiff now asserts that, when witness Kelm stated that the Batson automobile was "somewhere along about the side of" the Ormsbee automobile or that the front end of the Batson automobile was "about the middle of his (Ormsbee's) car" or "somewhere along in front of the hind wheels" or "something about the back end" of that vehicle, Kelm was (in the language of plaintiff's counsel) "referring to the point of impact at all times." But, witness these representative excerpts from Kelm's testimony:

"A. We got up by the side of him (Ormsbee) and then when we got on up further, just started to go around him, Mr. Ormsbee turned to the left across the road."

\* \* \* \* \* \*

"A. Mr. Batson's car, the front end of his was something about the back end (of the Ormsbee automobile) when he (Ormsbee) first started turning over, but we hit him in the front end of his car."

\* \* \* \* \* \*

"Q. Where was your (Batson's) car with relation to Mr. Ormsbee's car when you say he (Ormsbee) pulled to the left?

"A. We was somewhere along about the side of it.

"Q. The side of it?

"A. Yes, sir.

"Q. Where was the front end of your car with relation to the front end of Mr. Ormsbee's car?

"A. When they hit?

"Q. When he (Ormsbee) pulled to the left?

"A. Well, the front end of our car was about the middle of his car."

And, in their statement of "the evidence in its most favorable light" to their client, plaintiff's counsel wrote in their brief that "at the time the front end of the Batson

car in the left hand land (sic) came about even with the rear end of the Ormsbee car * * * the Ormsbee car started to turn left across the center line."

In her motion for rehearing, plaintiff *for the first time* seeks to use defendant Ormbee's testimony as to speed and distances; but, in her brief, plaintiff skimmed over Ormsbee's testimony with nothing more than this curt summary in the statement of facts: "The defendant Ormsbee testified that after he pulled across the center line he never looked back. He stated there was no other traffic coming north and no other automobiles involved in the immediate vicinity of the collision. He testified he never heard brakes squealing on the deceased Batson's motor vehicle or the horn blowing." Since the evidentiary theory developed by Ormsbee's testimony was contradictory of and at war with plaintiff's evidentiary theory [Napier v. Ferris, supra, 159 S.W.2d loc. cit. 366–367; Fisher v. Gunn, supra, 270 S.W.2d loc. cit. 873–874], and since plaintiff's counsel apparently so recognized and, in their presentation on appeal, made no reference to Ormsbee's estimates as to speed and distances, we did not detail his evidence in our original opinion. Suffice it to say now that plaintiff would not be aided by anything in her adversary's evidence, of which she might avail herself.

Careful reconsideration again leads to the conclusion, inescapable to us, that plaintiff did not make a submissible case under the humanitarian doctrine. Accordingly, plaintiff's motion for rehearing or, in the alternative, to transfer is overruled.

McDOWELL, P. J., and RUARK, J., concur.